Frank X. Altimari, J.
This is a motion by the assignee for an order requiring the General Electric Company to turn over to the assignee 462 units of Hotpoint merchandise.
Marta Cooperative, Inc. (hereinafter Marta) and the General Electric Company (hereinafter GE) have apparently done business with each other for some years. Up until March 11, 1970 they dealt on open account. On that date a security agreement and a financing statement were simultaneously executed. The security agreement bore no maturity date; the financing statement bore a maturity date of January 1, 1971. Some time prior to the maturity date, GE filed a continuation statement, bearing only its own signature. Marta executed an assignment for the benefit of creditors on November 21, 1972. GE thereupon informed the assignee that it held a perfected security interest in 462 units of Hotpoint merchandise and asserted its right to take possession. The assignee turned over the merchandise. Now, however, the assignee claims that GE’s representations were fraudulent. The assignee argues (1) that the financing statement and the security agreement should be read together so that the security interest of GE should have terminated on January 1, 1971 and (2) that GE had no power to unilaterally continue the security interest.
The function of a financing statement is to notify subsequent creditors that a security interest may exist. (Beneficial Fin. Co. of N. Y. v. Kurland Cadillac-Oldsmobile, 32 A D 2d 643.) The necessary elements of a financing statement are specified in section 9 — 402 of the Uniform Commercial Code. Section 2 of the Official Comments to section 9-402 of the Uniform Commercial Code (McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, § 9-402) states that the adoption of a notice filing system is the underlying purpose of that provision. Further evidence of this notice function is to be found in subdivision (2) of section 9-402 of the Uniform Commercial Code which, under certain circumstances, permits the filing of a financing statement not bearing the debtor’s signature. The financing statement is not intended then to embody the agreement between the parties. Bather, it is directed as subsequent *614 creditors and serves to put them on notice that a security interest may exist.
The security agreement is the document which embodies the actual agreement between the parties. (Gill Co. v. Fireside Realty, 11 Uniform Commercial Code Rep. Serv., 202 [Ore. Sup. Ct., July 27,1972].) Unless the grant of a security interest, is contained in the security agreement, there is no security interest. In Dennon, The Security Agreement (84 Banking L. J. 874, it is stated: “It is fundamental to any understanding of * * * Article 9 of the Uniform Commercial Code * * # that contractually created non-possessory security interests # * * can only be created in a security agreement signed by the debtor.” (Matter of Platt, 3 Uniform Commercial Code Rep. Serv. 275, 278 [Pa., Feb. 3, 1966]; emphasis supplied.) To ascertain the agreement between the parties, one must look to the security agreement.
Here we have a security agreement which is complete upon its face. It states no maturity date, and none is required. The assignee, however, contends that the security agreement and the financing statement should be read together to form the contract. In support of this approach, the assignee cites Matter of Carmichael Enterprises (334 F. Supp. 94 [N. D. Ga., 1971]) and Matter of Center Auto Parts, 6 Uniform Commercial Code Rep. Serv. 398 (Cal., 1968). In Carmichael the court had an exchange of letters and a financing statement. The last of these letters and the simultaneously executed financing statement, to which the letter explicitly referred, were read together by the court to form a security agreement. In Center Auto Parts the court fashioned a security agreement out of a promissory nóte and a financing statement which was explicitly referred to in the note as containing the description of the collateral. (Cf. Matter of Rand, 6 Uniform Commercial Code Rep. Serv. 1129 [Me.,1969]), where there was no. such explicit reference, a promissory note and a financing statement were not read together.) Here, however, there is a security agreement, complete on its face. There is no need here, as there was in the cases cited, to read two separate documents together to fashion a security agreement. Further, there is in the security agreement no explicit reference to the financing statement. There is, therefore, no “ special circumstance” here that would, require reading the security agreement and the financing statement together. The cases relied on by the assignee are therefore not applicable here.
The assignee also relies on Meriden Britannia Co. v. Zingsen (48 N. Y. 247), and the cases cited therein. Those cases stand *615 for the proposition that two or more documents may be read together to form a contract when they are sufficiently related in time and subject matter and when they all purport to govern the rights of the parties. Those cases are inapposite here; none involved a secured transaction or dealt with a document such as a financing statement, the function of which is notice to subsequent creditors.
As a general rule, courts have declined to import terms from the financing statement into the security agreement. (Cherno v. Bank of Babylon, 57 Misc 2d 801 [Sup. Ct., Nassau County, 1968, per Gulotta, J.]; Gill Co. v. Fireside Realty, 11 Uniform Commercial Code Rep. Serv. 202, supra.) The assignee correctly points otit that in cases where the description of the collateral in the financing statement is narrower than that in. the security agreement, the narrower agreement controls as between the secured party and other creditors. (Matter of Varney Wood Prods., 327-F. Supp. 425 [W. D. Va., 1971].) This result is required because subsequent creditors only have notice as to the narrower description and therefore the security interest is perfected only in the narrowly described collateral. Where however, the description in the financing statement is broader than that in the security agreement, it does not serve to expand the security interest of the secured party. (Matter of Mitchell v. Shepherd Mall State Bank, 10 Uniform Commercial Code Rep. Serv. 737 [10th Cir., 1972]; Tri-County Livestock Auction Co. v. Bank of Madison, 228 Ga. 325.) These cases support the basic premise that the security agreement contains the actual contract between the parties. The financing statement serves only to put third persons on notice that a security interest may exist.
Based on the foregoing, since there is a security agreement complete on its face and with no reference to the financing statement, a maturity date appearing only on the financing statement will not be read into the security agreement. The security agreement is enforceable according to its terms as between the parties. (Uniform Commercial Code, § 9-203.) Thus, GE’s claim was superior to that of the assignee as successor in interest to the assignor (Uniform Commercial Code, § 9-203) when GE took possession of the Hotpoint merchandise.
The assignee has other rights; he is also a lien creditor. (Uniform Commercial Code, § 9-301, subd. [3].) As a lien creditor he has a claim superior to that of a secured party where (1) the security interest was unperfected at any time after the assignment and (2) the. assignee had no knowledge *616 of it. (Uniform Commercial Code, § 9-301, subd. [1], par. [b].) Here the security interest was perfected at the time of the assignment and the assignee had notice. A proper financing statement was executed simultaneously with the security agreement on March 11, 1970 and duly filed on March 16, 1970. This filing perfected the security interest. (Uniform Commercial Code, § 9-303.) The stating of a maturity date put subsequent creditors (including the assignee) on notice that GrE held a security interest which was good until January 1, 1971, and for 60 days thereafter. (Uniform Commercial Code, § 9-403, subd. [2].) They were also on notice that if GE unilaterally filed a continuation statement within 6 months before and 60 days after January 1, 1971, the security interest would be good for the term of the continuation statement. (Uniform Commercial Code, § 9-403, subd. [3].) Thus, insofar as the assignee was a lien creditor, GE’s claim was superior to his when GE took possession of the Hotpoint merchandise. The assignee’s contention that GE could not unilaterally continue the security interest is without merit.
Marta’s former president, Bernard Artz, states under oath that he was ignorant of these provisions of the Uniform Commercial Code at the time of the agreement. That is of no consequence. The law in force when a contract is made is as much a part of the agreement as if it were expressly incorporated therein. (Dolman v. United States Trust Co. of N. Y., 2 N Y 2d 110.)
The motion is therefore denied in all respects.