In re John David BAKER, Debtor.

George REIBER, Chapter 13 Trustee for
the Estate of John David
Baker, Plaintiff,

v.

John David BAKER, June C. Baker,
Samuel Caccamise and Mary
Caccamise, Defendants.

Bankruptcy Nos. 81–20185, 81–2106A.

United States Bankruptcy Court,
W. D. New York.

Feb. 10, 1982.

Jeffrey W. Baker, Rochester, N.Y., for plaintiff.

John V. Shepard, Rochester, N.Y., for defendants.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This action was commenced by the trustee to recover an interest in real property transferred by the Chapter 13 debtor to his wife, to recover a yacht that was transferred by the debtor to his wife and to declare the lien of debtor's wife's father and mother void as against the boat. The action seeks to recover insurance proceeds which resulted when the yacht burned, or to place a lien thereon for any judgment that the plaintiff may get against the defendants. This action also seeks to impose, as costs, attorney's fees for the bringing of this action. Pretrials were had, depositions have been taken, the matter was placed upon the trial calendar and a complete trial of the issues has been had. As a result of that trial, the following facts appear.

The debtor filed his petition under Chapter 13 of the Bankruptcy Code on February 9, 1981. In his plan which was filed with the petition, he proposed to pay his unsecured creditors 15% over 36 months. Payments were to be made at the rate of $350 a month: The plan has not been confirmed due to objections filed, but confirmation has been adjourned from time to time and the debtor has been making the $350 a month payments. The creditors have objected to the confirmation of the plan, primarily, because they feel the debtor disposed of some of his assets prior to the time he filed his

petition under Chapter 13. This lawsuit seeks to resolve the issues raised by transfers made by the debtor in the year prior to his filing of his petition in bankruptcy. At issue, is the disposition of his home and a yacht the debtor owned.

The debtor, who is a suspended attorney, got into problems with the Monroe County Surrogate Court in August of 1978. In November of 1979, a settlement between the debtor and the beneficiaries of the estate was reached, whereby, the Surrogate held that payments in the amount of $35,000 that had been made by the estate to the account of the debtor (executor) to be improper and the debtor was surcharged in the amount of $22,000 plus interest. The surcharge amount was paid by the debtor in May of 1980. Twenty-one thousand dollars ($21,000) of the money to pay the debt was borrowed from his in-laws, the Caccamises also defendants, herein, in May of 1980. In September of 1980, the debtor was suspended from the practice of law for a minimum period of two years and he assigned his business lease and various business assets to his associate, John Shepard.

With this as background, the facts with regard to the transfers follow. In June of 1977, the debtor and his wife purchased a condominium known as 27 Beacon Hill, Fairport, New York for $73,500. They held title as tenants by the entirety. In January of 1979, the debtor and his wife placed a $40,000 collateral mortgage upon the residence. By deed dated July 17, 1980 and recorded on July 29, 1980, the debtor conveyed his interest in the residence to his wife. At the time of the transfer, the residence had a fair market value of at least $80,000. Real estate taxes due amounted to $7,824.89 and the principal balance due on the bond and mortgage was $39,317.10.

In September of 1973, the debtor acquired a Pearson Portsmouth yacht for $49,800. Title was in debtor's name alone. The debtor on September 1, 1980, transferred his yacht to his wife. At the time of transfer, the yacht was worth in excess of $50,000. Marine Midland had a lien of approximately $14,000 at the time of transfer on the yacht and the debtor had given Dr. and Mrs. Caccamise, the debtor's father and mother-in-law, a second lien upon the yacht to the extent of $21,000. There will be additional discussion of this lien at a later time. On September 9, 1980, the insurance policy covering the yacht was amended to substitute June Baker, the debtor's wife, as the named insured on the yacht. On September 26, 1980, the yacht was extensively damaged by fire leaving only a substantially intact hull of questionable value. The loss was assessed by the insurance company at $44,000. Thereafter, by Order of this Court dated March 24, 1981 the insurance company paid $13,577.40 to Marine Midland Bank, the loss payee on the yacht and the balance of $29,672.60 to the debtor's Chapter 13 trustee pending the outcome of this proceeding to determine the rights of the parties in the yacht and the insurance proceeds.

These actions have been commenced by the trustee to set aside the transfers of the yacht and the house as fraudulent conveyances under 11 U.S.C. § 548 and to recover the value of the real property and the yacht for the benefit of the estate under 11 U.S.C. § 550. Section 548 provides in part as follows:

§ 548(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... within one year before the date of the filing of the petition, if the debtor-

(1) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred ... indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and

(B)(i) was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer ...

There is no dispute in this case that the transfers in question occurred within one year of the debtor's petition. From the evidence given at the trial and the docu-

ments attached to the pleadings, it is amply demonstrated that the debtor was insolvent at the time of the transfers. The point of contention between the parties is whether the debtor received reasonable equivalent value in exchange for the transfer.

After the transfer of the real property, Mrs. Baker paid the property taxes, the monthly mortgage payments and upkeep expenses. However, the mortgage debt and the real property taxes were already debts for which Mrs. Baker was liable. Mrs. Baker assumed no additional obligation as a result of the transfer of the real property to her and Mr. Baker was never released from his.

The conveyance occurred within the time prescribed in § 544 at a time when the debtor was insolvent. The Bakers, at the time of the transfer, had equity in the property in excess of $33,000. The debtor's one-half interest in the property was worth $16,500 and he had no exemption that he could claim in regard to that property having used all his exemptions for other property.

With regard to the yacht, the yacht was transferred to the wife within the prescribed time for no consideration other than the assumption of debtor's obligation to Marine Midland of some $14,000 and to the Caccamises of $21,000. But really the only lien owed by the debtor on the yacht was the one to Marine Midland. The Caccamises did not acquire a security interest in the yacht as a result of a UCC–1 filed by the debtor. The testimony shows that the debtor never pledged the boat to the Caccamises for the money he received. What he did do was file a UCC–1 without ever giving the Caccamises an actual security interest. The overwhelming weight of authority is that no security interest can be created by the mere filing of a financial statement in the absence of a security agreement containing language necessary to grant a security interest. Section 9–203 of the Uniform Commercial Code of the State of New York which reads in part as follows:

(1)(a) A security interest is not enforceable against the debtor or third parties

with respect to the collateral and does not attach unless

(a) the collateral is in possession of the secured party pursuant to agreement or the debtor has signed a security agreement which contains a description of the collateral . . .

Here the note which was signed by Mr. Baker to the Caccamises acknowledging the debt of $21,000 merely states that he will pay $200 a month with interest until the boat is sold. This does not give the Caccamises a security interest in the boat.

With regard to the boat, it is argued that Mrs. Baker assumed obligation of the debtor in the amount of $35,000 and even if the debtor had full legal title to the yacht at the time of transfer, he only had, because of the equitable distribution rule of New York State Domestic Relation Law § 236, only a one-half interest in the yacht. The argument under Domestic Relation Law § 236 is rejected out of hand. The debtor may not apply this equitable distribution rule to support his contentions since § 236 did not make New York a community property state.

There is no question that at the time of transfer the yacht was worth at the very least $44,000. This was what the insurance adjustors negotiated as a settlement for the value of the yacht when the yacht burned. It burned within a month of the transfer. Furthermore, the debtor testified that he had actually turned down an offer in that amount for the yacht. Assuming without finding that Mrs. Baker assumed debtor's obligation to Marine Midland in the amount of $14,000 and the Caccamises in the amount of $21,000 the debtor received at best $35,000 for a yacht worth at least $44,000. This is not reasonably equivalent value. Since the transfer occurred within the prescribed period, while the debtor was insolvent and for less than a reasonable equivalent value, the transfer is voidable pursuant to § 548.

Furthermore, there is nothing in the evidence to show that Mrs. Baker assumed the debt of the Caccamises other than the debtor's naked assertion or that the Caccamises

released Mr. Baker from the note which has been admitted as evidence.

■ Having found the transfers voidable, it must now be determined what the trustee is entitled to recover from Mrs. Baker: The applicable section of the Code is § 550 which provides in pertinent part as follows:

§ 550(a) [T]o the extent that a transfer is avoided under section . . . 548 of this title, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from—

(1) the initial transferee of such transfer . . .

The purpose and thrust of this section is to restore the debtor's financial condition to the state it would have been had the transfer not occurred. This purpose would not be accomplished by the return of the damaged yacht or its present value. The loss incurred by the debtor's estate as a result of the transfer was the market value of the yacht at the time of the transfer less the value of valid liens against the yacht at that time.

Most of the evidence adduced at the trial as to the market value of the yacht is not reliable. None of the values were determined as a result of arm's length negotiations in a sale situation. Furthermore, neither party to this proceeding introduced testimony on the issue. The only figure that was negotiated was the extent of loss caused by the fire. That figure was set at $44,000. This figure when added to the value of the yacht in its present condition should reasonably approximate the value of the yacht at the time it was transferred. Therefore, it would seem appropriate for the trustee to recover the yacht and the $44,000 representing the fire loss less the value of the valid liens attached to the yacht. The only valid lien attached to the yacht was the one held by Marine Midland and that was paid off for $13,577.48.

An argument has been made that since Mrs. Baker was the loss payee of the fire insurance policy that the trustee would not be entitled to that money. However, the trustee is holding Mrs. Baker's interest in that money and it would seem appropriate to turn this over to the trustee rather than forcing the trustee to levy on the money he is holding. This amount added to the $16,500 which was the value of real property removed from the estate should make the estate whole.

■ The trustee has also asked that in accordance with § 276(a) of the New York Debtor and Creditor Law that he be given reasonable attorney's fees for handling the action. § 276(a) of the New York Debtor and Creditor Law provides in part as follows:

In an action . . . brought by a . . . trustee in bankruptcy, . . . for the benefit of creditors to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent . . . to hinder, delay or defraud either present or future creditors in which action . . . the . . . trustee in bankruptcy . . . shall recover judgment, the justice . . . presiding at the trial shall fix the reasonable attorneys' fees of the . . . trustee in bankruptcy . . . and the trustee in bankruptcy . . . shall have judgment therefore against the debtor and transferee who are defendants in addition to the other relief granted by the judgment.

In this regard, we have an attorney who is in financial difficulties because of his possible suspension from the practice of law, transferring his property to his wife at a time when she must have known that he was having severe financial problems as a result of the action by the Appellate Division of the State of New York and at a time when he was borrowing money from her parents to make up the monies which the Court ordered him to repay a client and this Court is asked to believe that this was not done in an attempt to defraud creditors of their rights in his property.

This Court finds that the transfers were made with the actual intent to hinder, delay and defraud the creditors and as a result the trustee's attorney is entitled to reasonable fees from Mr. and Mrs. Baker.

As a result of the foregoing, the trustee shall have judgment against Mrs. Baker making the transfer of the real property and the yacht null and void. Mrs. Baker may purchase the trustee's interest in the said real property for $16,500 or the trustee may sell said real property in accordance with 11 U.S.C. § 363. He shall have a judgment against Mrs. Baker for $29,762.60 with interest for the diminished value of the yacht. The interest of Samuel Caccamise and Mary Caccamise in the Pearson yacht by reason of the filing of UCC-1 is declared null and void. The trustee shall have judgment against the debtor and his wife for legal fees in the amount of $5,000 together with costs and disbursements of this action and it is so ordered.