**In re John David BAKER, Debtor.**

**George REIBER, Chapter 13 Trustee for the Estate of John David Baker, Plaintiff,**

**v.**

**John David BAKER, June C. Baker, Samuel & Mary Caccamise, Defendants.**

**Bankruptcy Nos. 81–20185, 81–2106A.**

United States Bankruptcy Court, W.D. New York.

May 3, 1985.

George Reiber, Rochester, N.Y., for plaintiff.

John Shepard, Rochester, N.Y., for the defendants.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This case was remanded to this Court from the United States District Court, Judge John T. Curtin, to determine whether the documents and circumstances surrounding a loan from the Caccamises to Mr. Baker, the debtor, are sufficient to make the Caccamises secured creditors.

The trustee's initial adversary proceeding sought to avoid the debtor's pre-petition fraudulent conveyances of a yacht and interest in real property, void the debtor's mother and father-in law's (Caccamises) lien against the yacht, recover insurance proceeds which resulted when the yacht burned, and receive attorney's fees. This Court held that the transfers were fraudulent pursuant to 11 U.S.C. § 548, that the Caccamises were unsecured creditors, that the trustee was entitled to recover insurance proceeds pursuant to 11 U.S.C. § 550, and that the trustee was entitled to attorney's fees. See *In re Baker*, 17 B.R. 392 (Bankr.W.D.N.Y.1982). The District Court affirmed this Court's holdings regarding the fraudulent conveyances, insurance proceeds and attorney's fees. The District Court, however, remanded the question of the existence of the Caccamises' security interest. Also remanded was the attorney's fees, but only to consider whether

any adjustment of the fees was necessary in view of the continuation of this case in the Bankruptcy Court. See *In re Baker*, CIV No. 82–735C (W.D.N.Y. Nov. 18, 1983). The trustee's January 17, 1985 application for additional attorney's fees was granted by an Order signed on March 26, 1985. A hearing was held in this Court on June 14, 1984 to consider the issues on remand. Briefs were filed by the parties and the case was submitted for decision on October 4, 1984.

The facts pertinent to this decision are as follows.[1] On May 20, 1980, Dr. and Mrs. Samuel A. Caccamise, the debtor's mother and father-in-law, loaned the debtor $21,000. To evidence this loan, the debtor prepared a typewritten promissory note with a twelve percent interest rate. The note made no mention of a security agreement. Dr. Caccamise testified that upon reconsidering the interest rate, he felt twelve percent was too steep, so he wrote a new promissory note with an interest rate of ten percent. The handwritten promissory note read as follows:

> I promise to pay to Samuel & Mary Caccamise at Rochester, N.Y. on demand the sum of twenty-one thousand dollars ($21,000) at 10% interest per annum. Payment are to be made as follows until the Pearson Boat is sold: Two hundred to be paid monthly on the principal, the 20th every month beginning June 20th. At the end of every 6 months of payments the interest at the rate of 10% to be paid on the balance owed. The first interest will be due Nov. 20, 1980.
>
> Dated: May 20, 1980
>
> **/s/ J. David Baker**

A UCC–1 financing statement, signed only by the debtor, was filed in the Monroe County Clerk's Office on May 21, 1980. The UCC–1 lists Mr. Baker as the debtor, Samuel and Mary Caccamise as the secured parties, and the collateral as the "1973 43%c Pearson Boat, Hull # 53, N.Y.Reg.

---

1. For a complete discussion of the facts in the initial adversary proceeding see *In re Baker*, 17 B.R. at 392–93.

NY 1709 DS, Serial number PEA 470530273, Engine Nos. 51629 & 51627."

■ The handwritten promissory note and the UCC–1 were the only two documents submitted to this Court at the September 15, 1981 hearing to prove the Caccamises' security interest. From this evidence, the Caccamises were found to be unsecured creditors. Neither the filing of the UCC–1 nor the promissory note conditioned on the sale of the boat created a security interest because no security agreement granting a security interest in the boat had ever been executed as required by New York's Uniform Commercial Code § 9–203(1)(a). 17 B.R. at 394.

The District Court also found that neither the promissory note nor the financing statement met the requirements of a security agreement. *In re Baker,* CIV No. 82–735C at 3. The District Court, however, noted that while many courts hold that the financing statement and the security agreement serve quite different and distinct functions, some courts read the documents in combination to create a security agreement. After citing these opposing viewpoints, the District Court made the following statement:

> Since the instant case involves neither a disagreement over collateral description nor a discrepancy in the purported intentions of debtor and creditor but only a dispute as to the existence of a security interest in the boat which was adequately described in the financing statement, this case is remanded to the bankruptcy judge to determine whether the documents and the circumstances surrounding the transaction are sufficient to make

the Caccamises secured creditors. *In re Baker,* CIV No. 82–735C at 5.

On March 13, 1984, subsequent to the District Court remand, the debtor filed a new piece of evidence with this Court; a security agreement alleged to have been executed on May 20, 1980. This security agreement was not produced at the § 341 meeting of creditors, at the examination of the debtor, or at the September 15, 1981 trial. At the June 14, 1984 hearing on remand, the debtor introduced into evidence this alleged security agreement dated May 20, 1980. The trustee questions the authenticity of the security agreement and opposes its introduction into evidence.

■ The first question presented is what weight will be given to the security agreement alleged to have been executed on May 20, 1980 which was not filed in this Court's initial adversary proceeding but was only produced as evidence subsequent to the District Court's decision to remand.

The second question presented is whether the documents and circumstances surrounding the loan from the Caccamises to their son-in-law are sufficient to make the Caccamises secured creditors.

If the security agreement filed with this Court subsequent to the District Court's remand is accepted as authentic, when added to the properly filed UCC–1 financing statement, the Caccamises clearly would hold a perfected security interest.[2] The trustee, however, has questioned the authenticity of this newly filed security agreement.

Mr. Baker testified that this agreement was found on the weekend before this Court's September 15, 1981 hearing. The

---

2. The Second Circuit Court of Appeals has held that three requirements must be met for a security interest to be valid and enforceable against both the debtor and third parties: the debtor must sign a description of the collateral; the security interest must attach, and the security interest must be perfected. *Allegaert v. Chemical Bank,* 657 F.2d 495, 503 (2d Cir.1980); NYUCC § 9–203(1) (McKinney Supp. 1984–1985). Section 9–203(1) of the NYUCC states that "a security interest is not enforceable against the debtor or third parties unless ... the debtor has signed a security agreement which

contains a description of the collateral." The Second Circuit has also held that whereas the purpose of the financing statement is merely to place creditors on notice that further inquiry is prudent, it is the security agreement which embodies the intentions of the parties. *In re Laminated Veneers Co., Inc.,* 471 F.2d 1124, 1125 (2d Cir.1973). Therefore, "[u]nless the grant of a security interest is contained in the security agreement, there is no security interest." *In re Modafferi,* 45 B.R. 370 (S.D.N.Y.1985) citing *In re Marta Cooperative, Inc.,* 74 Misc.2d 612, 614, 344 N.Y.S.2d 676, 678 (Nassau County Ct.1973).

debtor claims he found this document in a file relating to the sale of his boat and gave it to the Caccamises on the eve of the September 1981 hearing. Neither Mr. Baker nor the Caccamises, however, produced the document at the September hearing. Not producing this document at trial is quite astounding given the fact that Mr. Baker, as an attorney,[3] must have known how important such a security agreement would be to establish a valid security interest.

It is also interesting that only Mr. Baker was able to testify that the document was executed in May of 1980. Both Dr. Caccamise and his wife testified that they did not know that the security agreement existed until their son-in-law delivered it to them on the eve of the September 1981 trial. Also, the Caccamises never signed the agreement; the only signature appearing on the security agreement is Mr. Baker's.

Prior to the September 1981 hearing, Mr. Baker never mentioned any security agreement. In the defendant's answer, at the § 341 meeting, and at a subsequent examination of the debtor, the only documents ever mentioned by Mr. Baker regarding this loan transaction were the handwritten promissory note, the check for $21,000, and the filed UCC–1 financing statement. The debtor was asked prior to each meeting and examination to bring all documents relating to the Caccamise loan, and at the examinations was questioned whether any other documents existed. Mr. Baker never mentioned or produced any security agreement. Needless to say, the trustee, the trustee's attorney, and the Court were completely surprised by Mr. Baker's statement at the

September 1981 hearing that a security agreement had been found the weekend before that hearing.

Surely Mr. Baker knew that if his in-laws were found to be perfected secured creditors, they would stand in a much better position than his general unsecured creditors. Therefore, Mr. Baker definitely had a motive for fabricating a security agreement. Mr. Baker's pre-petition transfers of his yacht and real property to his wife were fraudulent conveyances. The District Court affirmed those findings noting that "actual fraud on the part of the debtor is properly sustained on the facts." *In re Baker*, CIV No. 82–735C at 2. Additionally, Mr. Baker's testimony at both hearings was extremely evasive.

Taking all of the above factors into consideration, this Court feels that the security agreement story was fabricated by Mr. Baker on the eve of the September 15, 1981 hearing and that the security agreement was a fake. Therefore, no weight will be given to the security agreement filed with this Court on March 13, 1984 and introduced into evidence at the June 14, 1984 hearing.

Without a security agreement, the documentary proof of the security interest consists of the handwritten promissory note and the filed UCC–1 financing statement. The District Court found that neither the financing statement filed by Mr. Baker, nor the promissory note meets the requirements of a security agreement. *In re Baker*, CIV No. 82–735C at 3. The District Court went on to say, "Appellants argue, however, that it may be possible to read these documents in combination to create a security interest. *Matter of Bollinger*

---

**3.** During the pendency of this adversary proceeding, the debtor was disbarred from the New York State Bar. The fourth department found "that respondent failed properly to identify and preserve funds and property of a client; failed to maintain complete records of all funds of his clients; failed to render appropriate account to his clients regarding them; commingled and converted clients' funds; failed to maintain true and correct records of clients' fiduciary accounts; and he withdrew from said accounts moneys for his own compensation and use with-

out accounting and reporting to his clients beforehand. The referee also found that respondent filed a suit knowing that such action would serve merely to harass or maliciously injure another and advanced a claim which was unwarranted under existing law." *Matter of Baker*, 85 A.D.2d 492, 449 N.Y.S.2d 106 (4th Dept. 1982). (Citations omitted).

Thereafter he was also disbarred from the practice of law in the State of Florida. *The Florida Bar v. Baker*, 419 So.2d 1054 (Sup.Ct.Fla. 1982).

Corp., 614 F.2d 924, 927 (3rd Cir.1980)." Id. Then after discussing the Second Circuit and New York cases which have "repeatedly announced that the financing statement and the security agreement serve different functions," the District Court remanded the case to this Court "to determine whether the documents and the circumstances surrounding the transaction are sufficient to make the Caccamises secured creditors." Id. at 3–5.

The cases which have read several documents in combination and looked at the surrounding circumstances to create a security interest require that in addition to the standard financing statement "there must be some further documentation corroborative of the debtor's intent to pledge collateral," In re Modafferi, 45 B.R. 370, 372 (S.D.N.Y.1985).

Thus, in In re Numeric, [485 F.2d 1328 (1st Cir.1973)] the first circuit sustained a claim of security after examining a financing statement together with a resolution passed by the debtor's board of directors authorizing the debtor to grant a security interest in the same collateral listed in the notice on file. 485 F.2d at 1328. Similarly, in In re Bollinger Corp., 614 F.2d 924, 928–29 (3rd Cir. 1980), the Third Circuit Court of Appeals upheld a security interest where, in addition to a financing statement, the parties exchanged letters constituting their course of dealing which clarified the debtor's pledge of collateral. Other cases have found valid security agreements where a financing statement was coupled with a letter from the debtor which described the collateral. See In re Penn Housing Corp., 367 F.Supp. 661 (W.D.Pa.1973) (financing statement plus promissory notes, letter and course of dealing); In re Carmichael Enterprises, Inc., 334 F.Supp. 94 [aff'd, 460 F.2d

1405]; In re Fibre Glass Boat Corp., 324 F.Supp. 1054 (S.D.Fla.), aff'd, 448 F.2d 781 (5th Cir.1971) (mem.) [cert. denied, 405 U.S. 976, 92 S.Ct. 1200, 31 L.Ed.2d 250]. In each of these cases, the debtor's intent to grant a security interest was manifested in written form. It therefore appears that in the absence of a "security agreement" denominated as such, some language reflecting a desire to grant a security interest must be contained within the documents offered to establish a security agreement under U.C.C. § 9–203. 45 B.R. at 372 (emphasis added).

In the case at bar, neither the financing statement nor the handwritten promissory note contains language reflecting a desire to grant a security interest. The language in the promissory note, "Payments are to be made as follows until the Pearson Boat is sold" is not granting language nor is it sufficient to reflect a desire to grant a security interest in the boat. The maturity of the note was simply made conditional upon the sale of the boat.

A desire to grant a security interest was not expressed by the debtor in any writing. There are no board of directors resolutions, no letters establishing a course of dealing and no letters describing the collateral. All of the cases cited above which read documents in combination required that the debtor's intent to grant a security interest be manifested in written form. There is no such writing in the case at bar.[4]

Among the circumstances surrounding the loan, the District Court indicated that "the most important observation is the absence of any dispute between the debtor and the lenders with respect to the existence of a secured interest in the boat. Certainly, the testimony of the parties, as

---

4. See also "Countrywide Metal Finders, Inc. v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.), 33 B.R. 668, 671–72 (Bkrtcy.E.D.N.Y. 1983), [where] it was held that an array of documents including a financing statement signed by the debtor did not constitute a written expression of present intent to create a security agreement. In another case decided in this cir-

cuit, a district court had concluded that boilerplate language in a promissory note that did not refer to a financing statement describing the collateral was insufficient to grant a security interest. See Connecticut Bank & Trust Co. v. Shoreline Electric Supply, Inc. (In re Shoreline Electric Supply, Inc.), 18 U.C.C.Rep.Serv. (Callaghan) 231, 236 (D.Ct.1975)." 45 B.R. at 373.

well as the documents, lends support to the existence of a security interest in the boat." CIV No. 82–735C at 3. Although the absence of any dispute as to the existence of a security interest might be persuasive in a proceeding between the debtor and the secured party,[5] this observation is not persuasive where the debtor is in bankruptcy and the creditors are his in-laws. In bankruptcy, the creditors have competing interests. If a creditor can prove a perfected security interest, he will be in a superior position to the general unsecured creditors. It is the trustee's job pursuant to 11 U.S.C. § 544, however, to protect the unsecured creditors' interests by avoiding unperfected security interests. If the debtor argued that no security interest was intended, his in-laws would share with the rest of the general unsecured creditors. The observation that there is an absence of any dispute between the debtor and his in-laws does not surprise this Court, nor does this Court consider the absence of a dispute in these circumstances persuasive that a security interest was created.

Viewed collectively, the above documents and circumstances suggest the possible existence of a security agreement and the intent to grant a security interest in the boat, but there is simply insufficient evidence to support a firm conclusion that the Caccamises have a valid security interest.

> The U.C.C.'s requirements for the creation of a security interest are simple and clearly set forth. It is not unreasonable to require that a creditor who seeks to obtain priority over other creditors comply with these minimal requirements as a condition for being accorded such favored treatment. *In re Modafferi,* 45 B.R. 373 citing *Mitchell v. Shepherd Mall State Bank,* 458 F.2d [700] at 704.

From the documents and circumstances surrounding this loan transaction, it is decided that: no desire to grant a security interest was expressed in any writing read individually or in combination; the fact that the debtor and creditor agree that a securi-

ty interest was intended is not persuasive when the creditor is a family member and stands to benefit in a bankruptcy distribution; and no other circumstances persuade this Court that a valid security interest exists. For the foregoing reasons, the Caccamises are found to be general unsecured creditors and it is so ordered.

---

**5.** For example, where the debtor tries to defeat the creditor's security interest because formal requirements were not met, but admits the parties intended to create a security agreement.