In re David LANZATELLA, Debtor.

Lucien A. Morin, Trustee, Plaintiff,

v.

Eduardo Galan, Defendant.

Bankruptcy No. 00–20865.
Adversary No. 00–2141.

United States Bankruptcy Court,
W.D. New York.

Oct. 19, 2000.

Lucien A. Morin, II, McConville, Consadine, Cooman & Morin, P.C., Rochester, NY, for trustee/plaintiff.

Lance J. Mark, Medina, NY, for defendant.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On April 7, 1999, David Lanzatella (the "Debtor") filed a petition initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that he: (1) was the owner of a 1997 Audi (the "Audi"), which had a value of $18,000.00 and was subject to a $15,000.00 lien in favor of Eduardo Galan ("Galan"); (2) had unsecured indebtedness in excess of $65,-375.00; and (3) was claiming the permissible $2,400.00 exemption in the Audi.

On June 8, 2000, the Debtor's Trustee (the "Trustee") commenced an Adversary Proceeding which requested that the Court determine that the lien Galan claimed on the Audi could be avoided pursuant to Section 544.[1] The Trustee's Com-

---

1. Section 544 provides, in part, that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsat-

plaint in the Adversary Proceeding alleged that: (1) on March 15, 2000, the Debtor borrowed $15,000.00 from Galan to purchase the Audi, at which time he executed a promissory note in favor of Galan (the "Galan Note"); (2) the Galan Note did not include a provision which granted Galan a security interest in the Audi or even mentioned it; (3) on March 15, 2000, the Debtor signed a New York State Department of Motor Vehicles Notice of Lien, Form MV–900, (the "Notice of Lien"), which also did not include any provision specifically granting Galan a security interest in the Audi; (4) to further support his position that he had a lien on the Audi which had priority over the interest of the Trustee, Galan had provided the Trustee with a copy of a Certificate of Insurance, dated March 15, 2000 from Allstate Insurance Company, which indicated that the Debtor had obtained insurance on the Audi that named Galan as a lienholder/loss payee (the "Certificate of Insurance"); (5) neither the Galan Note, the Notice of Lien nor the Certificate of Insurance, when viewed individually or together, constituted the written security agreement signed by the Debtor, required by Section 9–203(1)(a) of the New York Uniform Commercial Code (the "UCC") [2], nor the written agreement which reserves or creates a security interest, required by Sections 2101(j) and (k) of the New York Vehicle and Traffic Law (the "Vehicle Law") [3]; and (6) since a security interest was never properly reserved, granted or created in a writing signed by the Debtor, as required by the UCC and Vehicle Law, the Trustee, pursuant to Section 544, could avoid any lien Galan claimed on the Audi.

On August 16, 2000, after the Debtor had interposed an Answer to the Trustee's Complaint in the Adversary Proceeding, the Trustee filed a Motion for Summary Judgment and a Memorandum of Law, in which he asserted that: (1) Galan's Answer in the Adversary Proceeding did not raise a material issue of fact; (2) Section 9–203(1)(a) of the UCC required that for a security interest to be enforceable against a debtor or a third party, including a trustee in bankruptcy, the debtor must have signed a security agreement which describes the collateral; (3) Sections 2101(j) and (k) of the Vehicle Law required that in order to have a security interest, there must be a written agreement which reserves or creates such a security interest; (4) the documents which Galan had provid-

isfied at such time, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1)–(2) (2000).

**2.** Section 9–203(1) of the UCC provides that:

(1) Subject to the provisions of Section 4–208 on the security interest of a collecting bank, Sections 9–115 and 9–116 on security interests in investment property, and Section 9–113 on a security interest arising under the Article on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
(a) the collateral is in the possession of the secured party pursuant to agreement, the collateral is investment property and the secured party has control pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) value has been given; and
(c) the debtor has rights in the collateral.

Uniform Commercial Code § 9–203(1) (2000).

**3.** Sections 2101(j) and (k) provide, in part, that:

(j) "Security agreement" means a written agreement which reserves or creates a security interest
(k) "Security interest" means an interest in a vehicle reserved or created by agreement and which secures payment or performance of an obligation. The term includes the interest of a lessor under a lease intended as security. The term also includes an interest in a vehicle pursuant to a lien arising under section two hundred eleven of the lien law and section one hundred eleven-u of the social services law. A security interest is 'perfected' when it is valid against third parties generally, subject only to specific statutory exceptions.

CLS Vehicle and Traffic Law § 2101(j)–(k) (2000).

ed to the Trustee to support his claim that he had a valid and superior lien on the Audi, when read individually or together, did not satisfy the requirement that there be a specific grant of a security interest by a debtor in writing; and (5) pursuant to Section 544, any lien Galan claimed on the Audi could be avoided for the benefit of the unsecured creditors of the Debtor's estate.

On September 18, 2000, Galan filed a Response to the Motion for Summary Judgment and a Cross Motion for Summary Judgment (the "Cross Motion"). In the Response and Cross Motion, and at oral argument, the attorney for Galan asserted that: (1) in the Bankruptcy Court for the Western District of New York, Rochester Division, former Bankruptcy Judge Edward D. Hayes had held in a non-motor vehicle case, *In re Baker,* 48 B.R. 932 (Bankr.W.D.N.Y.1985) ("*Baker*"), that a bare promissory note and a UCC–1 financing statement were not sufficient in and of themselves to constitute the security agreement signed by the debtor which contained a description of the collateral, as required by Section 9–203(1) of the UCC; (2) unlike a UCC–1 Financing Statement, however, the Notice of Lien signed by the Debtor: (a) was also signed by Galan, as the lienholder; and (b) in the blank which asked for the "Date of Security Agreement," the parties had filled in the date March 15, 2000; (3) because the Notice of Lien was signed by both parties and made reference to the date of their security agreement, it evidenced the intent of the parties that Galan had been granted a security interest by the Debtor; (4) the Debtor's intent to grant Galan a security interest was further evidenced by an August 24, 2000 affidavit (the "Post–Petition Affidavit"), sworn to by the Debtor, which stated that he had intended the Galan Note to be a security agreement; (5) as stated by the First Circuit Court of Appeals in the *Matter of Numeric Corp.,* 485 F.2d 1328 (1st Cir.1973) ("*Numeric*"), the requirement in the UCC that there be a security agreement signed by the debtor was to satisfy the Statute of Frauds and insure the adequate identification of the collateral; (6) the Court in *Numeric* held that, although a UCC–1 Financing Statement alone was not sufficient, a writing or writings, regardless of label, which adequately described the collateral, carried the signature of the debtor, and established that in fact a security interest was agreed upon, satisfied both the formal requirements of the statute and the policies behind it; (7) at least one state court had found that the application to place a creditor's name as a lienholder on a certificate of title for a motor vehicle, since it: (a) was signed by the debtor; (b) named the lienholder; and (c) described the collateral, was sufficient to create a security interest under that state's version of UCC Section 9–203(1), and, therefore, was enforceable against a debtor and third parties, *See Kreiger v. Hartig,* 11 Wash.App. 898, 527 P.2d 483 (1974); and (8) the Galan Note, Notice of Lien and Certificate of Insurance, when read together constituted sufficient documentation to evidence the Debtor's intent to grant Galan a security interest in the Audi, and, therefore, satisfied the requirements of the UCC that there be a written security agreement and the Vehicle Law that there be an interest in a vehicle reserved or created by a written agreement.

On September 14, 2000, the Trustee filed a Reply to Galan's Response and Cross Motion, which alleged that: (1) the Notice of Lien is a simple administrative document which, because it requests that the parties set forth the date of their security agreement, cannot also serve as the security agreement it inquires about; (2) the Certificate of Insurance is not signed by the Debtor; and (3) the Galan Note does not describe the collateral or otherwise include language granting Galan a security interest in the Audi.

On the Hearing on the Motion for Summary Judgment and the Cross Motion, the Motion for Summary Judgment was grant-

ed, the Cross Motion was denied and the Court indicated that it would issue a written Decision & Order.

## *DISCUSSION*

### I *Overview and Summary of Decision*

■ In order to have a perfected security interest in a motor vehicle which has priority over a trustee in bankruptcy, who has the status of a "perfect lien creditor" under Section 544, a creditor must demonstrate that it has a security interest which has been both properly created and properly perfected. Institutional secured lenders and commercial attorneys: (1) are trained in this distinction; (2) are constantly reminded of it in continuing education and training experiences; (3) proceed carefully in documenting and perfecting a secured transaction to insure that there has been compliance with both the creation and perfection requirements of the applicable state law; and (4) know that their secured transaction will be scrutinized more carefully by the courts if there is a contest between a secured creditor and a bankruptcy trustee, than if there is a contest with another secured creditor, or simply a debtor, where there may be the least scrutiny.

■ As Judge Howard Schwartzberg expressed in his decision in *In re Modafferi*, 45 B.R. 370 (S.D.N.Y.1985), I believe that: (1) the requirements for the creation and perfection of a security interest, which, if complied with, will insure that it is superior to the rights and interests of a trustee in bankruptcy, who has a duty to maximize the return for unsecured creditors, are simple and clearly set forth; (2) it is not unreasonable to insist that a creditor who seeks to obtain such a priority status over unsecured creditors in a bankruptcy case comply with these minimal requirements; and (3) establishing a simple and consistent standard to determine whether the creation and perfection requirements of state law in connection with security interests have been met is important to the promotion of many of the underlying policies of the Bankruptcy Code, including the policy of equality of distribution.

■ Furthermore, I do not believe that standard official perfection forms, such as UCC–1 Financing Statements and Notices of Lien, intended to be used to perfect a validly created lien on titled property, can serve the dual function of also being a creation document, unless the language of the form has been appropriately supplemented. Standardized perfection forms are intended to be perfection documents. Creation documents are creation documents. The two are not interchangeable.

In this case, Galan has not offered a document or a combination of documents which satisfy the requirements of the UCC and the Vehicle Law that there be a written agreement signed by the Debtor which granted him a security interest in the Audi. Therefore, although Galan may have complied with the perfection requirements of New York law, he has not completed the first step in the process, properly creating a security interest in accordance with New York law.

### II *The Notice of Lien*

■ The Notice of Lien, even though signed by the Debtor and Galan, alone or in combination with the Galan Note, does not satisfy the requirement of New York law that there be a written security agreement signed by the Debtor which describes the collateral because: (1) it is a standard official government form intended to be a perfection document, not a creation document; and (2) it cannot serve as the security agreement which it inquires about.

Clearly the Notice of Lien, Form MV–900, contemplates that the parties have executed a separate written security agreement when it requires that the date of that agreement be set forth. I read the Form to be an explicit reminder to the parties that in order to have a valid and properly perfected security interest in and

lien on a motor vehicle in New York State, a creditor must have the debtor execute both a security agreement, a creation document, and a notice of lien form, a perfection document. What could be more clear to a prospective secured creditor. A creditor who fails to proceed on the route that this road map has clearly set forth cannot assert that it has a priority lien in a motor vehicle over the interests of a trustee in bankruptcy who has the status of a "perfect lien creditor" under Section 544.

New York courts, such as this Court in *Baker*, have held that a UCC–1 Financing Statement, even when executed by a debtor along with a promissory note that does not specifically grant a security interest in the applicable collateral, cannot satisfy the UCC requirement that there be a written security agreement signed by the debtor which describes the collateral. I hold that a New York Notice of Lien, Form MV–900, even when executed along with a promissory note that does not specifically grant a security interest in the applicable collateral, cannot satisfy the requirements of the UCC and the Vehicle Law that there be a written security agreement signed by the debtor which describes the collateral.

### III  *The Other Documents Offered by Galan*

█ The Post–Petition Affidavit, executed by the Debtor after the Trustee's rights as a "perfect lien creditor" had come into existence, cannot serve as the required creation document that was not in existence pre-petition. The Affidavit states that "I intended the promissory note to be a security agreement which secures payment or performance of my obligation to repay Mr. Galan, giving Mr. Galan a security interest through said promissory note and a lien put upon the title to an automobile known as the 'Audi'." Notwithstanding what appears to be the Debtor's desire to express that he intended to grant Galan a security interest, the Galan Note: (1) makes no mention whatsoever of the Audi; (2) contains no language which could be interpreted as granting Galan a security interest, since it dealt strictly with the repayment of the $15,000.00; and (3) even in its default provisions makes no mention of rights which could be interpreted as the rights New York law provides to a secured creditor upon default. Therefore, the Debtor's statement that he intended the Galan Note to be a security agreement is not credible.[4] Even if the Debtor intended to grant Galan a security interest, that intent is in no way evidenced by the language of the Galan Note.

█ The Certificate of Insurance cannot satisfy the requirement of a written security agreement because it is not signed by either party.

### CONCLUSION

The documents offered by Galan do not satisfy the requirements of New York law which would permit this Court to find that Galan holds a valid perfected security interest and lien which have priority over the Trustee with his status as a "perfect lien creditor" under Section 544. Therefore, the Motion for Summary Judgment is granted and any lien Galan may have on the Audi is avoided. The Cross Motion is in all respects denied.

**IT IS SO ORDERED.**

---

4. Fortunately, the Post–Petition Affidavit did not state that the Debtor intended the Notice of Lien or the Certificate of Insurance to be a security agreement. That would have been even less credible.