[Civ. No. 35874. Second Dist., Div. One. Sept. 1, 1970.]

GERALD M. NEEDLE, Plaintiff and Appellant, v.
LASCO INDUSTRIES, INC., Defendant and Respondent.

## COUNSEL

Needle & Brenner and Gerald M. Needle for Plaintiff and Appellant.

Thompson & Miller and G. Scott Miller for Defendant and Respondent.

## OPINION

**GUSTAFSON, J.**—This case involves an extremely close question of first impression in California.

Andy's Lumberland, Inc. (hereinafter the retailer), was being supplied with fiberglass panels for sale to its customers by Lasco Industries, Inc. (hereinafter the wholesaler), on a consignment basis in 1965. The retailer sold some of the panels without paying the wholesaler whereupon the wholesaler ceased to provide any more panels.

In July 1966 a representative of the wholesaler met with the president of the retailer to discuss the delinquent account. The wholesaler offered to deliver additional merchandise to the retailer provided that the retailer furnished security in the form of its "inventory and accounts receivable." The retailer agreed to do so whereupon the wholesaler filled in the blanks of a document entitled "Financing Statement." That document was executed on behalf of the retailer by its president and vice-president and on behalf of the wholesaler by its secretary. It was filed in the office of the Secretary of State on July 22, 1966.

The wholesaler resumed supplying merchandise to the retailer. The retailer's business continued to be poor and on February 15, 1967, the retailer made a general assignment to the plaintiff herein for the benefit of its creditors. While the record does not disclose the amount due to creditors, it was vastly in excess of the $5,976.17 held by plaintiff as assignee for the benefit of creditors. The amount due to the wholesaler was $4,636.86. The wholesaler claimed that it was entitled to the entire amount due to it on the basis that it was a preferred creditor.

█ Plaintiff brought this action for declaratory relief against the wholesaler putting in issue only one matter here pertinent, i.e., whether the "Financing Statement" constitutes a security agreement. The trial court found that it does and plaintiff appeals.

One of the purposes of the Commercial Code is to "simplify, clarify and modernize the law regarding commercial transactions." (Com. Code, § 1102.) One intended result was "a radical simplification in the formal requisites for creation of a security interest." (Uniform Com. Code Comment to § 9-101 which is § 9101 of the Cal. Com. Code.)

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation." (Com. Code, § 1201, subd. (37).) " 'Security agreement' means an agreement which creates or provides for a security interest." (Com. Code, § 9105, subd. (1) (h).) A security interest is not enforceable unless the "debtor" has signed a security agreement." (Com. Code, § 9203.)

The debtor here (the retailer) signed a document entitled "Financing Statement" which complied with section 9402 of the Commercial Code, including a description of the collateral of the secured party as "All inventory and accounts receivable of debtor, as of this date, or which may be acquired or arise during the term of this financing statement." Unquestionably the document would have sufficed as a security agreement if the description of the collateral had been "All inventory and accounts receivable of debtor, as of this date, or which may be acquired or arise during the term of this financing statement, as to which the debtor hereby grants to the secured party a security interest to secure payment for all merchandise supplied or to be supplied by the secured party to the debtor."

The purpose of filing a financing statement is to give an existing or prospective creditor the opportunity to inform himself of whether, and of the extent to which, an existing or prospective debtor has encumbered his assets and to govern himself accordingly in dealing with the debtor. The existing or prospective creditor may obtain a copy of any financing statement from the filing officer. (Com. Code, § 9407.) While the financing statement ordinarily will not reveal the terms of the security agreement, the theory is that this information can be obtained from the parties to the security agreement.

It is arguable in the case at bench that the wholesaler ought to be a preferred creditor because anyone checking with the Secretary of State would have found that the retailer had acknowledged that all its inventory and accounts receivable were the collateral of a security agreement with the whole-

saler. Since "a security agreement is effective according to its terms between the parties . . . against creditors" (Com. Code, § 9201) and since neither the wholesaler nor the retailer was obligated to disclose the terms of the security agreement to an inquiring creditor or prospective creditor, it can be argued that a creditor or prospective creditor should have acted on the assumption that there was a security agreement between the wholesaler and the retailer in which the property described was the collateral.

On the other hand, it is clear that the rights of a third person do not depend upon whether he has examined any financing statement. If the wholesaler and retailer had executed a security agreement but had not filed a financing statement, the security agreement would not make the wholesaler a preferred creditor even though none of the other creditors bothered to ascertain whether a financing statement had been filed. (Com. Code, § 9302.) The necessary corollary of this proposition is that a financing statement filed with respect to a security agreement which never comes into existence is a nullity.

The question is whether the financing statement executed by the wholesaler and the retailer in this case also serves as a security agreement. A security agreement must be a writing "which creates or provides for a security interest." (Com. Code, § 9105, subd. (1) (h).) *American Card Co.* v. *H. M. H. Co.* (1963) 97 R.I. 59 [196 A.2d 150] held that a financing statement failed "to qualify also as a security agreement because nowhere in the form is there any evidence of an agreement by the debtor to *grant* claimants a security interest." (Italics added.) To the same effect are *Scott* v. *Stocker* (10th Cir. 1967) 380 F.2d 123 and *DuBay* v. *Williams* (9th Cir. 1969) 417 F.2d 1277. Since one of the purposes of the Commercial Code is to "make uniform the law among the various jurisdictions" (Com. Code, § 1102), the cited cases are compelling auhority which we accept.

There is a second reason why the financing statement here cannot be considered a security agreement. While the collateral is described, there is no indication of the obligation for which it is security. For all that appears from the writing, the obligation secured may have been a loan from the wholesaler to the retailer which was subsequently repaid and might not have encompassed the retailer's obligation to the wholesaler for merchandise delivered. A security interest is collateral "which secures payment or performance of an obligation" (Com. Code, § 1201, subd. (37)) and the security agreement is effective only "according to its terms between the parties . . . against creditors." (Com. Code, § 9201.) At a minimum the "terms" must recite the obligation secured. Professor William D. Warren suggests that appropriate language is a grant of a security interest "to secure the performance of the obligations set out in paragraph one," i.e., a paragraph in the

agreement which fully sets out the obligation. (3 Cal. Commercial Law (Cont. Ed. Bar 1966), p. 56.)

In the light of our resolution of the issue discussed, there is no need to discuss the other issues briefed by the parties. The wholesaler is not a preferred creditor and the judgment is reversed with directions to enter judgment for plaintiff.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied September 29, 1970, and respondent's petition for a hearing by the Supreme Court was denied November 10, 1970. Wright, C. J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.