In re Henry Edward FRAZIER, Sr., and wife, Mary Frances Frazier, d/b/a Frazier Brothers Nursery, Debtors.

COOKEVILLE PRODUCTION CREDIT ASSOCIATION, Plaintiff,

v.

Henry Edward FRAZIER, Sr. and wife, Mary Frances Frazier, d/b/a Frazier Brothers Nursery, Defendants.

Henry Edward FRAZIER, Sr. and wife, Mary Frances Frazier, d/b/a Frazier Brothers Nursery, Plaintiffs,

v.

COOKEVILLE PRODUCTION CREDIT ASSOCIATION, Defendant.

Bankruptcy 280–03873.
Adv. Nos. 281–0400, 281–0423.

United States Bankruptcy Court,
M. D. Tennessee.

Dec. 31, 1981.

**676**

Ramon Adcock, Smithville, Tenn., for plaintiff.

Gregory H. Hodges, Knoxville, Tenn., for defendants.

## MEMORANDUM

PAUL E. JENNINGS, Bankruptcy Judge.

Debtors own and operate an agriculture nursery and landscaping business in DeKalb County, Tennessee under the name of Frazier Brothers Nursery. From the evidence and pleadings it appears that Cookeville Production Credit Association (P.C.A.) extended credit to the Debtors on a number of occasions. P.C.A. alleges Debtors' total indebtedness to P.C.A. as of February 9, 1981 was $33,338.95. P.C.A. further alleges that it has a valid and perfected security interest in the following items owned by the Debtors: all nursery stock, all tractors, all farm equipment, all nursery equipment, one 1979 pickup 4 speed vehicle, one 530 Case backhoe, one 12 horsepower Gravely tractor with equipment, one trailer to haul backhoe, one tractor plow, one row cultivator, one 24 disc and one 1980 Chevrolet Luv vehicle. Alleging inadequate protection of its security interest, P.C.A. instituted Adversary Proceeding No. 281–0400 requesting modification of the automatic stay and abandonment of the above-described property.

Debtors answered P.C.A.'s complaint and denied the material allegations therein. Debtors then filed Adversary Proceeding No. 281–0423 objecting to the secured status of P.C.A. The two adversary proceedings were set for a joint hearing. At the hearing, P.C.A. acknowledged that if the Debtors prevail in their objection to P.C.A.'s secured status, then its request for relief is moot. At the hearing Debtors' counsel acknowledged that the Defendants have a valid, enforceable and perfected security interest in the 1980 Chevrolet Luv vehicle and the one Gravely tractor with equipment. The parties then determined

that the following issues should be resolved by the court:

1. Whether the debtor, as debtor in possession, has standing to raise its asserted objections to P.C.A.'s claim;

2. Whether a financing statement may also serve as a security agreement;

3. Whether the security agreement in question contains the elements necessary to be valid and enforceable; and

4. If a security interest has been created, whether that security interest has been properly perfected.

The court must first determine whether the Debtors have standing to raise objections to P.C.A.'s secured status.

■ In its argument that the Debtors do not have standing, P.C.A. relies upon the following language of Tennessee Code Annotated (T.C.A.) § 47–9–201 (1979):

General validity of security agreements. —Except as otherwise provided by chapters 1 through 9 of this title, a security agreement is effective *according to its terms between the parties*, against purchasers of the collateral and against creditors.... (emphasis added).

P.C.A. argues that the above emphasized language estops the debtor from asserting objections to the security agreement. This argument, however, must fail in view of the subsequent provision in T.C.A. § 47–9–203:

Enforceability of security interest—Proceeds, formal requisites.—(1) ... a security interest is not enforceable against the debtor or third parties unless:

(a) ...

(b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops ..., a description of the land concerned.

In the instant case, the debtor has asserted that the security agreement does not create a security interest and does not adequately describe the purported collateral nor the land concerned. Thus, under state law, the debtor has standing to object to the validity and enforceability of the security agreement.

■ P.C.A. also argues that, pursuant to T.C.A. § 47–9–401(2), Debtors may not raise objections to its secured status based upon allegedly erroneous filing of its financial statements because Debtors had knowledge of the content of the financing agreement. T.C.A. § 47–9–401(2) provides as follows:

(2) a filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement *against any person who has knowledge of the contents* of such financing statement. (emphasis added).

It is true that in an ordinary situation, these Debtors possibly could not assert the defense of improper perfection of a financing statement, the contents of which they had actual knowledge. Counsel for P.C.A. admits that a chapter 11 trustee would have standing to object to the allowance of the claim based upon erroneous perfection of the security agreement. 11 U.S.C. § 502(a) provides for the allowance of claims or interests as follows:

Allowance of claims or interests. (a) A claim or interest, proof of which is filed under § 501 of this title, is deemed allowed, unless a *party in interest*, including a creditor of a partner in a partnership that is a debtor in a case under Chapter 7 of this title, objects. (emphasis added).

Clearly, a debtor in possession is a "party in interest" within the meaning of 11 U.S.C. § 502(a).

In discussing who is a "party in interest" under 11 U.S.C. § 502(a), *Collier on Bankruptcy* draws the logical and necessary conclusion that

surely where there is no trustee, the right or the duty [to object to allowance of a claim or interest] can be implied where the exercise of that right is the only means of complying with the statutory duty. Collier on Bankruptcy, ¶ 502.01 (15th ed. 1981).

A Chapter 11 debtor in possession has the rights, powers, and duties of a trustee serving in a Chapter 11 case. 11 U.S.C. § 1107. Legislative history is supportive of the view that the debtor in possession is clothed with the duties, rights and powers of a trustee. With regard to 11 U.S.C. 1107, the House and Senate reports provided:

> This section places a debtor in possession in the shoes of a trustee *in every way.* The debtor is given the rights and powers of a Chapter 11 trustee. He is required to perform the functions and duties of a Chapter 11 trustee [except the investigative duties]. (emphasis added). H.R. Rep.No. 595, 95th Cong., 1st Sess. 404 (1977); S.Rep.No. 989, 95th Cong., 2nd Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6360, 5902.

Thus, the duty of a Chapter 11 trustee "if a purpose would be served, [to] examine proofs of claims and object to the allowance of any claim that in improper" is a duty of a Chapter 11 debtor in possession. 11 U.S.C. § 704(4); 11 U.S.C. § 1106(a)(1). Thus, it is the opinion of this Court that the Debtors in Possession may object to P.C.A.'s perfection of its security interest even though they had actual knowledge of the contents of the financing statement filed in the county register's office.

■ The next issue to be resolved is whether a financing statement may also serve as a security agreement. A security agreement must contain the following elements:

1. an agreement which creates or provides for a security interest [T.C.A. 47–9–105(1)(h) ];

2. the debtor's signature [T.C.A. § 47–9–203(1)(b) ];

3. a description of the collateral [T.C.A. § 47–9–203(1)(b) ];

4. a description of the land concerned, where the collateral is crops or oil, gas or minerals to be extracted or timber to be cut. [T.C.A. § 47–9–203(1)(b)].

If these elements are found in an instrument or document then there is a security agreement, valid and enforceable between the parties. T.C.A. § 47–9–203(1)(b). Whether the security agreement may have been incorporated into a financing statement is irrelevant in the determination of whether a valid security agreement has been executed. Therefore, the Court holds that a financing statement may also serve as a security agreement if that financing statement contains the requisite elements of T.C.A. 47–9–105(1)(h) and 47–9–203(1)(b).

Debtors cite *Equibank v. H. L. Clement Co.,* (Bkrtcy.W.D.Pa.1981) 12 B.R. 165 in support of its argument that financing statement and a security agreement cannot be one in the same. The Court has considered the cited case and does not find its holding to support that proposition. *Equibank v. H. L. Clement Co., supra,* holds that a written intention to grant or create a security interest is an essential element of a valid and enforceable security agreement. There is no indication from the Pennsylvania bankruptcy court that it would find a financing statement containing *all* of the necessary elements of a security agreement is invalid and unenforceable as such. *See Peoples Bank of Elk Valley v. Murfreesboro Production Credit Association (In re Lee),* 14 B.R. 804 (Bkrtcy.E.D.Tenn.1981).

■ The Court now must determine whether there is a valid security agreement in the instant case. There is no dispute that the financing statement contains the debtor's signature. There is, however, a dispute as to whether a security interest was granted. In discussing the necessity of language granting a security interest, Bankruptcy Judge Clive Bare made the following statements.

> There are no magic words that create a security interest. There must be language, however, in the instrument which when read and construed leads to the logical conclusion that it was the intention of the parties that a security interest be created.... The requirements of the Code for creating a security interest are simple—an intention to create a security interest is all that need be shown—a dozen words or less are sufficient, but the security agreement must contain lan-

guage that meets this simple requirement. *In re Nottingham*, 6 U.C.C.REP. SERV. 1197, 1199 (E.D.Tenn.1969)(B.J.). *See also* U.C.C.REP.SERV. ¶ 9402.2.

On the front side of the form used in the instant case states: "This Financing Statement *and Security Agreement* is Presented to the Filing Officer for filing pursuant to the UCC". (emphasis added). Immediately above the Debtor's signature line are the words:

This statement and agreement has been executed by the parties this *11* day of *May*, 1978, and IS SUBJECT TO THE TERMS AND PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, the same being incorporated herein by reference.

And, on the reverse side of the document, is the following language:

IT IS FURTHER AGREED and covenanted that, WHEREAS, the aforesaid *Debtor(s)* is (are) indebted to the aforesaid secured Party-Lender and hereafter expect(s) to seek additional loans and advances from said Secured Party-Lender and *desire(s) to give security for all such indebtedness and future advances*: NOW, THEREFORE, WITNESSETH: *As security for the payment of all existing and future indebtedness and liabilities of Debtor to the Lender*, and of all renewals and extensions thereof, and any and all additional loans and advances hereinafter made by Lender, its successors or assigns, to Debtor prior to the filing of record of a Termination Statement executed by Lender to the effect that Lender no longer claims a security interest hereunder, *Debtor hereby gives and grants unto the Lender*, its successors and assigns, *a security interest in the property and goods described on the reverse side hereof*, including Extension Sheets, *and further covenants and agrees* with the Lender as follows:

\*    \*    \*    \*    \*    \*

13.    That *it is the intention of the parties that this instrument shall serve both as a "Financing Statement" and "Security Agreement"* as authorized by law. (emphasis added).

The Court thus finds that the document clearly evidences an agreement by the parties that a security interest be created and granted by the Debtor in the described collateral.

Also in dispute is whether the description contained in the security agreements are sufficient to comply with T.C.A. § 47–9–110 which states:

For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described.

In the Comments to Official Text the purpose of § 47–9–110 is outlined as follows:

The requirement of description of collateral (see Section 9–203 and Comment thereto) is evidentiary.  The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible the identification of the thing described.  Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called "serial number" test.  The same test of reasonable identification applies where a description of real estate is required in a financing statement.  *See* Section 9–402.

Thus, the courts are left with a case by case determination of whether a particular description "reasonably identifies what is described."

In the instant case, the documents describe the disputed collateral as follows:

all nursery stock
all tractors
all farm equipment
all nursery equipment
one 1979 pickup 4 speed vehicle
one 530 Case backhoe
one trailer to haul backhoe
one tractor plow
one row cultivator
one 24 disc

This Court finds the above descriptions to be sufficient to reasonably identify the collateral as required by T.C.A. § 47–9–110. It is not necessary to use the classifications of goods as defined in T.C.A. § 47–9–109 as long as the language used reasonably identifies the collateral.

The description of the real estate is also subject to the reasonable identification test of T.C.A. § 47–9–110. The real estate was described as follows:

All of the above described crops are or will become located on the farm land owned (rented) by Edward Frazier and all various farms in DeKalb County, Tennessee. (underlining signifies handwritten words in original).

Testimony by the debtors indicated that although all of the nursery business was conducted on 1 ½ acres of land, the Debtors do own several farms in DeKalb County. The Court finds that the above description reasonably identifies on what property Defendant's collateral was or might be located, that is, on any of the farms owned or rented by Edward Frazier in DeKalb County, Tennessee. Although a legal description of each parcel of land would have been the best description of the land, the description given is sufficient.

Having found P.C.A. to have a valid and enforceable security interest in the described collateral, the last issue presented for resolution is whether that security interest was properly perfected by the filing of the financing statement in DeKalb County, the County of the Debtors' residence and of the real property on which the Debtors' nursery was located. T.C.A. § 47–9–401 dictates the filing requirements for perfection of security interests and, in pertinent part, provides:

Place of filing—Erroneous filing—Removal of Collateral.—(1) The proper place to file in order to perfect a security interest is as follows:

(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the register in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the register in the county where the goods are kept, and in addition when the collateral is crops in the office of the register in the county where the land on which the crops are growing or to be grown is located;

(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

(c) in all other cases, in the office of the secretary of state.

Debtors insist that the nursery stock is inventory and that all of the other items listed as collateral are equipment which required filing in the Secretary of State's office. Debtors admitted that P.C.A.'s security interests in the 1980 Chevrolet Luv vehicle and the one 12 horsepower Gravely tractor with equipment are validly perfected. P.C.A.'s lien on the 1980 Chevrolet Luv truck was noted on its title and filed with the Tennessee Secretary of State. Apparently, the Debtors admit that the Gravely tractor is farm equipment and thus properly perfected by filing in DeKalb County. P.C.A. argues that the nursery stock is farm products and the rest of the collateral is farm equipment and, thus, the proper place for filing was in the DeKalb County Register's Office.

T.C.A. § 47–9–109 classifies goods into four categories: consumer goods, equipment, farm products, and inventory. These classes are mutually exclusive in that the same property cannot at the same time and to the same person, be in different classes. T.C.A. § 47–9–109, comment 2. In borderline cases the principal use of the property is determinative. *Id.; International Harvester Credit Corporation v. Hill, et al*, 496 F.Supp. 329 (M.D.Tenn.1979). These categories are important in determining the correct place to file a financing statement in order to perfect a security

interest. T.C.A. § 47–9–109 Comment 1; *In re Laminated Veneers Co.*, 471 F.2d 1124 (2nd Cir. 1973).

■ "Farm products" and "inventory" are defined in T.C.A. § 47–9–109 as follows:

Classification of goods–"Consumer goods"–"Equipment"–"Farm Products"–"Inventory".—Goods are:

. . .

(3) "farm products" if they are crops or livestock supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, wool clip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory;

(4) "inventory" if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment.

The difficulty of classifying the nursery stock is that the Debtors' occupation is a mixture of farming operations as well as business operations. The Debtor testified that he grows some of the plants used in his nursery business and that he also buys some stock. Debtor testified that he is engaged in a "continual growing process" because it often takes from one to seven years for the seedlings that he sets out to reach a salable size. Of course, the length of growing time depends upon the particular type of plant. This cultivation process of tending and caring for the trees, shrubs and plants is obviously a farming operation and the products of this farming operation are farm products. *See Mountain Credit v. Michiana Lumber & Supply, Inc.*, 10 U.C.C.REP. SERV. 1347, 1349, 31 Colo.App. 112, 498 P.2d 967, 969 (1972); *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286, 37 CCH LAB.CAS. ¶ 65,507 (5th Cir. 1959).

However, that part of the nursery stock which is mature and is available for sale by the nursery-man is inventory within the definition of T.C.A. § 47–9–109(4).

Therefore, the court finds P.C.A. is properly perfected as to that nursery stock which is still in the ground and has not yet matured. This stock is farm products-crops. Mature stock is inventory and as to that, P.C.A. is not perfected.

■ Debtors assert that even if the nursery stock is found to be crops, P.C.A.'s security interest does not attach in after acquired nursery plants pursuant to T.C.A. § 47–9–204(4) which states:

When the security interest attaches-After-acquired property—future advances.—

.     .     .     .     .

(4) No security interest attaches under an after-acquired property clause:

(a) to crops which become such more than one (1) year after the security agreement is executed except that a security interest in crops which is given in conjunction with a lease or a land purchase or improvement transaction evidenced by a contract, mortgage or deed of trust may if so agreed attach to crops to be grown on the land concerned during the period of such real estate transaction;

Clearly, P.C.A. does not have a security interest in the crops which were acquired or planted after May 11, 1979, the security agreement having been executed on May 11, 1978. However, some, if not most, of the plants which the nursery had in the ground (and which are considered farm products by this court) are still in the growing process and thus P.C.A.'s security interest in those plants, trees and shrubs continue, at least until the trees, plants, and shrubs reach maturity and are removed for sale. Thus, the Court determines that P.C.A. has a validly perfected security interest in these plants, trees and shrubs which were acquired prior to May 11, 1978, and which were still in the cultivation process at the time of the Debtors' filing in

bankruptcy. Trees, plants, and shrubs in the crop category as above discussed and acquired after May 11, 1979, are not covered as they became crops more than one year after execution of the security agreement.

■ There is no question that the tractors, farm equipment, nursery equipment, 1979 pickup 4 speed vehicle, 530 Case backhoe, trailer to haul backhoe, tractor plow, row cultivator, and 24 disc are equipment. The issue is whether this equipment was bought or used primarily in connection with the Debtors' landscaping or nursery business operation (requiring filing with the Secretary of State) or the Debtors' farming operation (requiring filing with the DeKalb County Register's Office). T.C.A. § 47–9–401(1).

Debtors testified that the 530 Case backhoe and trailer to haul it are used exclusively for landscaping and excavation. Debtors stated that the backhoe is used to pick up and haul debris and to level ground and is not used in connection with the growth of any crops. Based upon this uncontroverted testimony, the court finds that the backhoe and trailer used to haul the backhoe are business equipment and therefore P.C.A. is not properly perfected as to those items.

■ Clearly, the tractor plow, row cultivator, and 24 disc are farm equipment insofar as they are used in the cultivation process of the nursery stock referred to *infra*. P.C.A. is properly perfected as to those items. There was no testimony concerning the use of the tractors, farm equipment, nursery equipment or 1979 pickup 4 speed vehicle. Rule 301(b), F.R.B.P. reads as follows:

(b) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Therefore, it appears the burden was on the Debtors to prove that P.C.A. was not a secured creditor. Debtors have not met this burden with respect to the tractors, farm equipment, nursery equipment and the 1979 pickup 4 speed vehicle. Therefore, the Court must find that these items of collateral are farm equipment and P.C.A.'s security interests in these items are properly perfected.

Accordingly, it is the determination of the Court that P.C.A. is a secured creditor with respect to the following items of collateral:

1. nursery stock which was acquired prior to May 11, 1979, and which was still in the cultivation stage on the date of the Debtors' filing in bankruptcy;

2. tractor plow;

3. row cultivator;

4. 24 disc;

5. tractors;

6. farm equipment;

7. nursery equipment; and

8. 1979 pickup 4 speed vehicle.

P.C.A.'s lien upon the following items of collateral is declared void:

1. nursery stock herein designated as inventory;

2. nursery stock acquired after May 11, 1979, and which is still in the cultivation stage;

3. 530 case backhoe; and

4. trailer to haul backhoe.

An appropriate order will be entered.