**In re Joseph P. MODAFFERI, Sr., and Maryanne Modafferi, Debtors.**

**Bankruptcy No. 83 B 20598.**

United States District Court,
S.D. New York.

Jan. 9, 1985.

Teitelbaum & Gamberg, P.C., New York City, for Miriam Teitelbaum, Trustee; Miriam Teitelbaum, New York City, of counsel.

Klein & Klein, P.C., Suffern, N.Y., for Peg-Leg Productions, Inc.; David M. Klein, Suffern, N.Y., of counsel.

HOWARD SCHWARTZBERG, District Judge.

This creditor, Peg-Leg Productions, Inc., desires to get a leg up on the unsecured creditors of the above-captioned debtors and asserts that it holds a perfected secured claim by virtue of the debtors' written promissory note and the subsequent filing of U.C.C.–1 forms with the appropriate offices in Rockland County and New York State. On the other hand, the trustee in bankruptcy in this Chapter 7 case argues that Peg-Leg Productions does not have a leg to stand on as a secured claimant because its position is flawed by the absence of a security agreement, as required under Article 9 of the Uniform Commercial Code, Section 9–203.

## FACTS

1. On December 13, 1982, the debtors borrowed $10,000 from Peg-Leg Productions in exchange for their written promissory note to repay that amount to Peg-Leg Productions, upon demand at the latter's offices in New City, New York, with interest at the rate of ten percent per annum, payable on a quarterly basis. The note was silent as to the existence of any collateral to secure payment.

2. One month later, on January 14, 1983, Peg-Leg Productions filed a financing statement, Form U.C.C.–1, in the appropriate filing office in Rockland County, New York. The financing statement was signed by the debtor, Joseph Modafferi, and the president of Peg-Leg Productions. The debtor listed on the financing statement was Joseph Modafferi, C.P.A. His office address was also specified. Item 5 of form U.C.C.–1 states that the financing statement covers the following property: "All office equipment, furniture and all accounts payable." A similar form U.C.C.–1 was filed by Peg-Leg Productions five months later, on June 21, 1983, with New York State.

3. On December 27, 1983, the debtors filed with this court their joint voluntary petition in bankruptcy pursuant to Chapter 7 of Title 11, United States Code.

4. Peg-Leg Productions filed a proof of claim in this case as a secured claimant on the basis of the December 13, 1982 promissory note it received for the $10,000 loan and the subsequent filing of U.C.C.–1 forms, which referred to the office equipment, furniture and accounts receivable of the debtor, Joseph Modafferi.

5. The debtors did not sign any document specifically referred to as a security agreement other than the promissory note and the form U.C.C.–1 which was signed by the debtor, Joseph Modafferi.

## DISCUSSION

Having failed to obtain from the debtors a signed separate security agreement containing a description of collateral for the purpose of creating a security interest, Peg-Leg Productions has no kick coming when the debtors' trustee in bankruptcy objects that Peg-Leg Productions does not hold a secured claim in this case.

It is fundamental that three requirements must be met for a security interest to be valid and enforceable against both the debtor and third parties: the debtor must sign a document describing the collateral, the security interest must attach and the interest must be perfected. *Allegaert v. Chemical Bank*, 657 F.2d 495, 503 (2d Cir.1980); N.Y.U.C.C. § 9–203(1) (McKinney Supp.1984–1985). Section 9–203(1) states in pertinent part that "the security interest is not enforceable ... unless ... the debtor has signed a security agreement which contains a description of the collateral ...." In contrast to a financing statement which merely places creditors on notice that further inquiry is prudent, the security agreement embodies the intentions of the parties. *Commercial Trading Company, Inc. v. Bassin (In re Laminated Veneers Co., Inc.)*, 471 F.2d 1124, 1125 (2d Cir.1973). Consequently, "[u]nless the grant of a security interest is contained in the security agreement, there is no security interest." *In re Marta Cooperative, Inc.*, 74 Misc.2d 612, 614, 344 N.Y.S.2d 676, 678 (N.Y.Nassau County Ct. 1973).

The foregoing authorities and a literal reading of U.C.C. § 9–203(1) are not dispositive of the issue in this case, namely, whether a financing statement taken together with an earlier signed promissory note, silent as to the existence of collateral, satisfy the writing requirement for the creation of a security interest. The two-fold purpose of the writing requirement was explained by the First Circuit Court of Appeals in *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir.1973), as follows:

> The draftsmen of the UCC ascribed two purposes to [the writing] requirement. One purpose was evidentiary, to prevent disputes as to precisely which items of property are covered by a secured interest. *See* Uniform Commercial Code

§ 9–203, Comment 3; *J.K. Gill Co. v. Fireside Realty Inc.*, 262 Or. 486, 488, 499 P.2d 813 (1972). The second purpose of the signed-writing requirement is to serve as a Statute of Frauds, preventing the enforcement of claims based on wholly oral representations. *See* Uniform Commercial Code § 9–203, Comment 5.

The strong weight of authority is of the view that although it is not necessary to present a separate, formal document entitled "security agreement" to establish a valid security interest, *see, e.g., In re Numeric Corp.*, 485 F.2d at 1331; *General Motors Acceptance Corp. v. Lefevre (In re Lefevre)*, 27 B.R. 40, 42–43 (Bkrtcy.D.Vt.), *aff'd*, 38 B.R. 980 (D.Vt.1983); *Winshall v. McCormick (In re McCormick)*, 24 B.R. 718, 720 (Bkrtcy.E.D.Mich.1982), a standard form financing statement, standing alone, does not constitute a security agreement. *Transport Equipment Company v. Guaranty State Bank*, 518 F.2d 377, 380 (10th Cir.1975); *In re Numeric*, 485 F.2d at 1331; *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 703–04 (10th Cir.1972); *Mid Eastern Electronics, Inc. v. First National Bank*, 380 F.2d 355, 356 (4th Cir. 1967); *In re Carmichael Enterprises, Inc.*, 334 F.Supp. 94, 104 (N.D.Ga.1971), *aff'd*, 460 F.2d 1405 (5th Cir.1972) (mem.); *In re Mann*, 318 F.Supp. 32, 35–36 (W.D.Va. 1970); *Needle v. Lasco Industries, Inc.*, 10 Cal.App.3d 1105, 1108–09, 89 Cal.Rptr. 593, 595–96 (1970); *American Card Co. v. H.M.H. Co.*, 97 R.I. 59, 62, 196 A.2d 150, 152 (1963). *But see In re Dayton Suzuki, Inc.*, 27 B.R. 915 (Bkrtcy.S.D.Ohio 1983). Indeed, official comment 2 to U.C.C. § 9–402 explains that the financing statement alone "indicates merely that the secured party who has filed *may* have a security interest in the collateral described." (emphasis added).

■ It is clear that where a standard financing statement is presented to establish a valid and enforceable security interest, there must be some further documentation corroborative of the debtor's intent to pledge collateral. Thus, in *In re Numeric*, the first circuit sustained a claim of security after examining a financing statement together with a resolution passed by the debtor's board of directors authorizing the debtor to grant a security interest in the same collateral listed in the notice on file. 485 F.2d at 1328. Similarly, in *In re Bollinger Corp.*, 614 F.2d 924, 928–29 (3rd Cir.1980), the Third Circuit Court of Appeals upheld a security interest where, in addition to a financing statement, the parties exchanged letters constituting their course of dealing which clarified the debtor's pledge of collateral. Other cases have found valid security agreements where a financing statement was coupled with a letter from the debtor which described the collateral. *See In re Penn Housing Corp.*, 367 F.Supp. 661 (W.D.Pa.1973) (financing statement plus promissory notes, letter and course of dealing); *In re Carmichael Enterprises, Inc.*, 334 F.Supp. 94; *In re Fibre Glass Boat Corp.*, 324 F.Supp. 1054 (S.D. Fla.), *aff'd*, 448 F.2d 781 (5th Cir.1971) (mem.). In each of these cases, the debtor's intent to grant a security interest was manifested in written form. It therefore appears that in the absence of a "security agreement" denominated as such, some language reflecting a desire to *grant* a security interest must be contained within the documents offered to establish a security agreement under U.C.C. § 9–203. As the court stated in *Mitchell v. Shepherd Mall State Bank:*

> The fact that the parties signed and filed a financing statement which covered inventory, accounts receivable and contract rights, in addition to equipment, furniture, and fixtures, is of no consequence to our decision. The function of a financing statement is to put third parties on notice that the secured party who has filed it may have a perfected security interest in the collateral described. *Absent language which would constitute the debtor's grant of a security interest, a financing statement cannot serve as a security agreement.*

458 F.2d at 703–04 (citation and footnote omitted) (emphasis added). *See also Transport Equipment Company v. Guaranty State Bank*, 518 F.2d at 380 (citing

*Mitchell* with approval and dismissing claim for security interest where financing statements contained no "granting" language); *Shelton v. Erwin*, 472 F.2d 1118 (8th Cir.1973) (financing statements usually do not contain necessary grant of a security interest); *Scott v. Stocker*, 380 F.2d 123, 127 (10th Cir.1967) (financing statement form could not qualify as a security agreement due to lack of evidence of debtor's intent to grant security interest in property); *In re Center Auto Parts*, 6 U.C.C.Rep. Serv. (Callaghan) 398 (C.D.Cal.1968) (financing statement, though signed by the debtor and describing the collateral, did not create a security interest where there was no grant of such); *cf. In re Dayton Suzuki, Inc.*, 27 B.R. at 917 ("grant" clause may be oral if that is the intent of the parties). *Contra Morey Machinery Company, Inc. v. Great Western Industrial Machinery Company*, 507 F.2d 987 (5th Cir.1975).

One recent bankruptcy court decision has noted that there is no statutory or case law supporting or contradicting the positions taken in *In re Numeric* and *In re Bollinger* where supplementary documentation was relied upon to support financing statements and uphold security interests. Notwithstanding the deference displayed to these decisions by Judge Duberstein in *Countrywide Metal Finders, Inc. v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.)*, 33 B.R. 668, 671–72 (Bkrtcy.E.D.N.Y. 1983), it was held that an array of documents including a financing statement signed by the debtor did not constitute a written expression of present intent to create a security agreement. In another case decided in this circuit, a district court has concluded that boilerplate language in a promissory note that did not refer to a financing statement describing the collateral was insufficient to grant a security interest. *See Connecticut Bank & Trust Co. v. Shoreline Electric Supply, Inc. (In re Shoreline Electric Supply, Inc.)*, 18 U.C.C. Rep.Serv. (Callaghan) 231, 236 (D.Ct.1975).

■ An examination of the evidence in this case reveals no written expression by the debtor granting a security interest. The financing statement presented by Peg-Leg Productions, signed by one of the debtors, merely lists the covered collateral; it contains no "granting" language and therefore fails to demonstrate a present intent to pledge collateral. Notwithstanding the policy expressed by the drafters of the U.C.C. that its terms be construed liberally, *see* § 1–102(1), this court is constrained to find that the debtor did not grant a security interest to Peg-Leg Productions based on the evidence presented. The goal of liberal construction does not dispense with the requirements of U.C.C. § 9–203. This point was expressed in *In re Broward Auto Brokers, Inc.* 11 U.C.C.Rep.Serv. (Callaghan) 402, 404 (Bkrtcy.S.D.Fla.1972) as follows:

> Although there is a direction above that the code is to be liberally construed, the further provision in regard to making the law uniform puts a restriction on such a direction. A line must be drawn somewhere. If each court or each jurisdiction went along its merry way waiving one or more specific requirements of the act in order to liberally construe the act, there would probably be a complete lack of uniformity. Furthermore, it is not the security agreements that are to be liberally construed, it is the act.

*Accord Shelton v. Erwin*, 472 F.2d at 1120. The U.C.C.'s requirements for the creation of a security interest are simple and clearly set forth. It is not unreasonable to require that a creditor who seeks to obtain priority over other creditors comply with these minimal requirements as a condition for being accorded such favored treatment. *Mitchell v. Shepherd Mall State Bank*, 458 F.2d at 704.

Even if this court were to overlook the lack of "granting" language in the documents proffered by Peg-Leg Productions, there is another reason to deny this creditor secured status. This is not a case where the promissory note refers to collateral or a financing statement so that there are two documents indicative of an intent to create a security agreement. Instead,

the promissory note in this case is silent as to the existence of any collateral. Furthermore, the requirement that there be a nexus between the note and financing statement is absent in that the latter fails to state that it secures the indebtedness acknowledged by the debtors in the December 13, 1982 promissory note. The significance of the nexus between the note and financing statement was set forth by the court in *Needle v. Lasco Industries, Inc.* as it rejected a claim of security:

> There is a second reason why the financing statement here cannot be considered a security agreement. While the collateral is described, there is no indication of the obligation for which it is security. For all that appears from the writing, the obligation secured may have been a loan ... which was subsequently repaid .... A security interest is collateral "which secures payment or performance of an obligation" and the security agreement is effective only "according to its terms between the parties ... against creditors." At a minimum the "terms" must recite the obligation secured.

10 Cal.App.3d at 1108, 89 Cal.Rptr. at 595–96 (citations omitted). The financing statement presented by Peg-Leg Productions does not on its face recite that it secures the $10,000 obligation evidenced by the December 13, 1982 note and therefore, it does not qualify as a security agreement under Article 9 of the U.C.C.

## CONCLUSIONS OF LAW

1. Peg-Leg Productions does not have a validly perfected secured claim against the office equipment, furniture and accounts payable belonging to the debtor, Joseph Modafferi by reason of the promissory note signed by both debtors and the subsequently filed financing statement, form U.C.C.–1, which was signed by Joseph Modafferi and the President of Peg-Leg Productions.

2. The bankruptcy trustee's objection to secured status for Peg-Leg Productions under the claim filed by the latter, is sustained.