**In re Gerald Lee BAKER & Betty Nichols Baker, d/b/a Bedford Grade Construction Company, Debtors.**

**C. Kenneth STILL, Trustee, Plaintiff,**

**v.**

**PEOPLES NATIONAL BANK OF SHELBYVILLE, TENNESSEE and George Baker, Defendants.**

**Bankruptcy No. 1–84–00910.**
**Adv. No. 1–85–0023.**

United States Bankruptcy Court,
E.D. Tennessee.

Oct. 31, 1985.

Frank Van Cleave of Ray & Van Cleave, Tullahoma, Tenn., for plaintiff.

Andrew C. Rambo of Bomar, Shofner, Irion, & Rambo, Shelbyville, Tenn., for defendant, Peoples Nat. Bank.

Lee Russell of Russell & Russell, Shelbyville, Tenn., for defendant, George Baker.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The main issue between the plaintiff, trustee in bankruptcy, and the defendant, Peoples National Bank (the Bank), is whether the Bank had a perfected security interest in property that it foreclosed upon before the debtors' bankruptcy. The facts are as follows.

On January 29, 1980, Gerald Baker (the debtor), Alvis Baker, George Baker, and Don Baker executed a promissory note to the Bank and a security agreement. The security agreement does not contain any description of collateral. The note, however, says:

> As collateral security for the payment of this note ... the following property has been *deposited* with and is hereby pledged to the holder hereof, to-wit:
>
> UCC–Equipment-See Attached List
> Titles-Trucks

[emphasis in original]

At the bottom of the note is a handwritten notation as follows:

|  | Bedford Grade Construction Co. |
| --- | --- |
|  | Gerald Baker |
| 1047183 <u>new</u> | Alvis Baker |
|  | Don Baker |
|  | George Baker |

The principal amount of the note was $32,000. It provided for interest at the rate of 14.5%. The note was due in 90 days.

Two days after execution of the note and security agreement, the Bank filed a UCC–1 financing statement with the register of deeds of Bedford County, Tennes-

see. The carbon copy shows that it was signed by all the co-makers of the note. About two weeks later, the Bank filed a financing statement with the Tennessee secretary of state. Both financing statements list the same equipment and vehicles as collateral. A typed list of the collateral is attached to the carbon copy of the financing statement filed with the secretary of state. The list is on the stationery of Baker Structural Enterprises, a corporation in which one or more of the co-makers of the note engaged in business. The list is dated January 29, 1980, the day the note and security agreement were executed.

The original promissory note was succeeded by approximately thirteen combination notes and security agreements executed by Patricia Baker. The Bank produced five of these. Each referred to the original note of January 29, 1980. Each indicated that it was a renewal by having "renewal" or "RN" written on the "Proceeds by" line and in one instance by having "renewal" also written beside the line for "Amount paid on your account".

The five notes produced are summarized in the chart below:

| Date | Amount | Term | Interest |
|------|--------|------|----------|
| 6–17–82 | $33,406.53 | 90 days | 15% |
| 9–15–82 | $32,062.57 | 90 days | 17% |
| 12–14–82 | $34,642.11 | 90 days | 13.5% |
| 3–25–83 | $34,642.11 | 120 days | 13.5% |
| 8–12–83 | $34,642.11 | 90 days | 14% |

Three of the five notes described the collateral as "UCC–1 on equipment".

Each of the five notes had two lines for the makers to sign. Patricia Baker signed on the line below "Bedford Grade Construction Co.", which was handwritten on the first line.

In November, 1983, Don Baker, and Patricia Baker, and the debtor signed a form corporate resolution that was modified to show that Bedford Grade Construction Company was a partnership. It certified to the Bank that Don Baker, Patricia Baker, George Baker, and the debtor were authorized to borrow money on behalf of the company. The debtor and Don Baker signed as partners. Patricia Baker signed but did not put the word "partner" after her signature.

### Discussion

The subsequent notes executed by Patricia Baker appear to have been intended as renewals of the original note, rather than replacements. The subsequent notes that are in evidence were all marked as renewal notes. The principal amount of some of the renewal notes apparently included unpaid interest due on the previous note. This would give the Bank interest on interest but does not mean the later note was intended to replace the original rather than extend the time for payment. The parties could argue over the correct amount due. The Bank, however, could make the paperwork show that each note paid off the previous note without making the transaction a novation rather than a renewal. The court concludes that the subsequent notes executed by Patricia Baker were renewals of the original note. *Commerce Union Bank v. Burger-In-A-Pouch, Inc.,* 657 S.W.2d 88 (Tenn.1983).

The parties remain bound by the original note without regard to whether Patricia Baker had real or apparent authority to bind some or all of the parties to the renewal notes. If the original note by itself or in conjunction with other documents was sufficient to create an enforceable security interest, then the security interest is still enforceable without regard to Patricia Baker's execution of the renewal notes. *Commerce Union Bank v. Burger-In-A-Pouch, Inc.,* 657 S.W.2d 88 (Tenn.1983).

To create an enforceable security interest, the Uniform Commercial Code (UCC) requires a writing signed by the debtor and containing a description of the collateral, unless the secured party has possession of the collateral. Tenn.Code Ann. § 47–9–203(1)(b). The requirement of a writing with a description of the collateral is evidentiary. The writing is proof to others that the secured party has a security interest and that it applies to particular property. UCC § 9–203, Official Comment 3.

One document with the magic words "I hereby grant a security interest in", followed by a description of the collateral, is not required. See generally J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 904–910 (2d ed. 1980). A security agreement is a contract that, like any other contract, may be composed of more than one document. See *Jenkins v. Malone,* 695 S.W.2d 186 (Tenn. 1985). The question is whether the party attempting to enforce the contract can prove that the documents go together. *Casco Bank & Trust v. Cloutier,* 398 A.2d 1224, 26 U.C.C.Rep. 499 (Me.1979); *Komas v. SBA,* 71 Cal.App.3d 809, 139 Cal.Rptr. 669, 22 U.C.C.Rep. 550 (1977); A. Corbin, Contracts §§ 508–519 at 484–485 (one vol. ed. 1952).

The note referred to a UCC–1 on equipment. A UCC–1 with a specific description of the collateral was filed in the county register's office on the second day after execution of the note. The UCC–1 was signed by the four co-makers of the note and must have been executed about the time the note was executed. About two weeks later, the Bank filed a second UCC–1 with the secretary of state. It contains a description of the same collateral as the first financing statement. The carbon copy that is in the record does not show whether the co-makers of the note also signed the second UCC–1. Attached to the carbon is a typed list of the collateral on the stationery of Baker Structural Enterprises, a corporation in which one or more of the co-makers of the note engaged in business. The list is dated the same day as the note. These documents are sufficiently related in time and by the reference in the note that they can be taken together as the security agreement with a description of the collateral. *In re Belmont Industries,* 1 B.R. 608, 28 U.C.C.Rep. 846 (Bankr.E.D.Tenn. 1979); see also *Jenkins v. Malone,* 695 S.W.2d 186 (Tenn.1985).

There is a minor question regarding the note's reference to the UCC–1 and the truck titles. The space where they are referred to was intended for a description of collateral deposited with the Bank. Nevertheless, anyone reading the note should realize that the reference was intended to give the Bank a security interest in the equipment and the trucks.

The financing statement filed with the secretary of state perfected the Bank's security interest in the items described to the extent they were "equipment" within the UCC's definition and not subject to the certificate of title law. Tenn.Code Ann. §§ 47–9–109 & 47–9–401(1)(c). This means that the Bank must prevail as to all the listed collateral except perhaps four trucks and a lowboy trailer.

The financing statement identified the trucks as follows:

   1973 C–60 Chevrolet Dump Truck

   1971 International 1600 Dump Truck

   1970 Ford ½ Pickup Truck

   1972 Chevrolet Pickup Truck.

The Bank's foreclosure sale advertisement listed all four trucks, but the list of property sold did not include the 1970 Ford pickup. The Bank in its trial memorandum says the 1970 Ford was not found. Thus, the question is whether the Bank had a perfected security interest in the other three trucks by notation on the title certificates or otherwise.

The Bank argues that it perfected its security interest by taking possession of the collateral more than 90 days before the debtor's bankruptcy and so there could not have been an avoidable preferential transfer. 11 U.S.C. § 547(b)(4), (3); Tenn.Code Ann. § 47–9–301(1)(b). The proof was a written release or surrender signed by the debtor and Don Baker. It surrenders the collateral as property of Baker Structural Enterprises. Possession is sufficient to perfect a security interest if the secured party has actual physical possession or some other kind of control that will put third parties on notice that the secured party has an interest in the property. *In re King,* 10 B.R. 685, 31 UCC Rep. 697 (Bankr.E.D.Tenn.1981); *In re Ault,* 6 B.R. 58, 30 UCC Rep. 1714 (Bankr.E.D.Tenn. 1980). The written surrender by itself does not prove such possession.

The pleadings leave some doubt as to whether there is really a dispute as to these three trucks. The proof so far has been by documents and stipulations. The documents do not include title certificates with the Bank's liens noted, but the Bank says it has them. There has been no testimony regarding the Bank's possession. The court will allow further proof if it is necessary, or the parties should inform the court if there is no dispute as to the three trucks.

The Bank admits that it did not have a title certificate to the lowboy trailer. The trustee contends that the trailer was required to have a title certificate and that a lien could be perfected only by notation on the title certificate. The Bank argues that its security interest was perfected by filing of the financing statement with the secretary of state.

This court is bound by the decision in *In re Sexton*, 18 B.R. 733 (E.D.Tenn.1982) aff'g 18 B.R. 730 (Bankr.E.D.Tenn.1981). It held that a semi-trailer is subject to the certificate of title law. The Bank's security interest was not perfected by filing of the financing statement with the secretary of state. It was perfected at the earliest by the Bank's taking possession. The court has left the proof open on the question of possession of the three trucks discussed above and will leave it open on the question of possession of the lowboy trailer.

The trustee also seeks a judgment against George Baker for the deficiency of the assets of the partnership, Bedford Grade Construction Company, to meet its liabilities. 11 U.S.C. § 723(a). At this point such a judgment would be premature even though George Baker admits that he was a general partner in Bedford Grade Construction Company. The filing of a voluntary bankruptcy petition by the debtor, a general partner, constituted the filing of an involuntary petition against the partnership. 11 U.S.C. § 303(b)(3)(A). However, there has been no order for relief against the partnership. 11 U.S.C. § 303(d), (h); Bankruptcy Rule 1004(b), 1010–1013. The trustee who can recover under Code § 723(a) is the partnership's trustee. The plaintiff trustee is the trustee of a general partner but not of the partnership.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.