**In re HOYT'S, INC. dba "Etchings", Debtor.**

**Bankruptcy No. 89–00956–C.**

United States Bankruptcy Court,
N.D. West Virginia.

Aug. 16, 1990.

Daniel A. Oliver, Morgantown, W. Va., for First Nat. Bank of Morgantown.

Thomas H. Fluharty, Interim Trustee.

## MEMORANDUM OPINION

L. EDWARD FRIEND, II, Bankruptcy Judge.

The Debtor, Hoyt's, Inc., dba Etchings (the "Debtor") filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of West Virginia on December 4, 1989. The Debtor listed only one secured creditor, the First National Bank of Morgantown ("FNBM"), on its schedules. By order dated January 5, 1990, there was a determination by the Court that FNBM was due the sum of $194,487.64, exclusive of post-petition interest. Pursuant to the January 5, 1990 order, certain equipment and furnishings of the Debtor were abandoned by the Trustee to FNBM.

At various times, the Debtor deposited certain sums into deposit account No. 77–53187 (the "Account") at FNBM. On April 26, 1990, the Trustee filed a Motion to Compel Turnover of Property of the Estate, seeking a determination that the funds in the Account were property of the estate and an order directing FNBM to surrender the funds to the Trustee. As of May 4, 1990, the Account contained funds totalling $10,278.82. The pleadings do not indicate the amount of funds on deposit in the Account as of the date of the filing of the Debtor's Chapter 7 petition, although it is alleged by the Trustee that the sum of

$6,069.29 existed in the Account as of December 22, 1989.

FNBM claims a security interest in the Account pursuant to a Promissory Note ("the Note") executed by the Debtor on or around July 20, 1989. The Note contains a promise to pay FNBM $300,000.00 and contains the following language:

Having deposited herewith as collateral security for payment of this or any other liability ... the following property, viz:

*Equipment and Securities*

with the further right to call for additional security, and on failure to respond, this obligation shall be deemed payable without demand or notice, with full power and authority to the holder hereof to sell and assign and deliver the whole of the above mentioned security, or any part thereof, or any substitute thereof, or any addition thereto, or any other property at any time given or left in possession of the holder hereof at any Brokers Board, at public or private sale, at the option of the holder hereof on the non-performance of the promise, or the non-performance of any of the liabilities above mentioned ...

The Note makes no reference to accounts of the Debtor, or for that matter, to any property of the Debtor other than that "deposited" with FNBM as collateral to secure the indebtedness evidenced by the Note. FNBM has not asserted that it obtained any other document purporting to be a security agreement in relation to this transaction. Nevertheless, FNBM now asserts that it validly perfected a security interest in the Debtor's accounts receivable due to its filing of financing statements with the Clerk of Monongalia County and the Secretary of State of West Virginia on June 20, 1989 and June 21, 1989, respectively. Said financing statements listed the following property in the description of the collateral:

All machinery, equipment, furniture and fixtures, now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts, equipment and tools belonging thereto or for use in connection there-with; all inventory, raw materials, work in process and supplies now owned or hereafter acquired along with the proceeds thereof, together with the accounts receivable and situate at the above address, or at any such other location that the debtor may do business. Also included but not limited to the attached list.

A listing of food service equipment, furnishings and construction was attached thereto.

FNBM now claims that it was the intent of the parties that FNBM be granted a security interest in all of the Debtor's property and that the inadvertent omission of proceeds and accounts receivable in the Note is not fatal to a finding that it holds a security interest in such items. FNBM argues that, when read in conjunction with the financing statements, the Note satisfactorily reflects an enforceable security interest in the Account pursuant to W.Va.Code § 46–9–203, which requires only that a security agreement be signed by the debtor and contain a description of the collateral. The Trustee disputes these contentions, and asserts that FNBM has no enforceable security interest in the Account. FNBM has also requested that this Court hold an evidentiary hearing to determine its secured status by parol evidence if it is not persuaded by the documents before it that the Debtor intended to grant it a security interest in accounts and proceeds.

At the outset it must be noted that W.Va.Code § 46–9–104(1) states that the provisions of Article 9 of the W.Va.Code do not apply "to a transfer of an interest in any deposit account ... except as provided with respect to proceeds ... and priorities in proceeds". It has not been established in FNBM's pleadings that any of the funds on deposit in the Account are proceeds of the Debtor's equipment or inventory. Accordingly, even if it could be established that FNBM's documents did reflect a security interest in proceeds of the Debtor's property and the Debtor's accounts receivable, FNBM would have the burden of further establishing that the funds in the Account were actually *proceeds* of other col-

lateral, as such security interest would not otherwise be enforceable.

■ The Court need not reach this issue, however, since it holds that FNBM never had an enforceable security interest in the Debtor's accounts receivable or the proceeds of the Debtor's inventory or equipment. W.Va.Code § 46–9–203(1) states that a security interest is not enforceable against the debtor or third parties with respect to collateral and does not attach unless:

> (a) the collateral is in the possession of the secured party, pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...

The Note executed by the Debtor on July 20, 1987, provided that the Debtor had deposited certain equipment and securities for collateral security with FNBM as of that date. FNBM concedes, in hindsight, that its bank officer did not use the proper form of note to reflect the grant of a security interest in the Debtor's property. It nonetheless urges this Court to find that the financing statements it filed with the Clerk of Monongalia County on July 20, 1987, and with the Secretary of State on July 21, 1987, when viewed in conjunction with the Note executed by the Debtor on July 20, 1987, satisfy the requirements of establishing its secured interest in the collateral set forth in the financing statements.

■ FNBM's argument fails. The Note does not express any intent on the part of the Debtor to grant any security to FNBM for repayment of the obligation thereunder other than that property in possession of FNBM as of July 20, 1987. Accordingly, FNBM must rely solely on its financing statements to establish any secured interest in the equipment, inventory, and accounts in possession of the Debtor. A financing statement alone does not establish a security interest, but indicates merely that the party who has filed "may have a security interest in the collateral described." Official Comment 2 to U.C.C. 9–402. The mere reflection of collateral on a financing statement without a corre-

sponding security agreement reflecting an intent to grant a secured interest in certain property does not establish an enforceable security interest in such property. "Absent language which would constitute the debtor's grant of a security interest [in specific property], a financing statement cannot serve as a security agreement." *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 703–04 (10th Cir.1972); *In re Modafferi*, 45 B.R. 370, 372 (D.C.S.D.N.Y. 1985).

This Court is persuaded by the rationale in *Modafferi* that the goal of liberal construction of the provisions of the Commercial Code does not permit a court to dispense with the basic requirements of Section 9–203. As stated by the *Modafferi* court,

> The U.C.C.'s requirements for the creation of a security interest are simple and clearly set forth. It is not unreasonable to require that a creditor who seeks to obtain priority over other creditors comply with these minimal requirements as a condition for being accorded such favored treatment.

45 B.R. at 373, citing *Mitchell*, 458 F.2d at 704.

FNBM relies on a number of cases to support its argument that the financing statements, when viewed in conjunction with the Note, establish that it holds a security interest in the Account. The Court finds the cases cited by FNBM unpersuasive, and for the most part, inapposite to the present situation. The majority of these cases involved situations where the creditor, although failing to obtain a document entitled "security agreement", had written evidence of the debtor's intent to give the creditor a security interest in specific property in addition to filed financing statements. FNBM has offered no such written evidence in support of a finding that it is secured by the Debtor's property in the present case.

FNBM also relies on *In re Baker*, 54 B.R. 743 (Bankr.E.D.Tenn.1985). In *Baker*, the court found that a UCC–1 listing certain collateral, when viewed with corresponding notes and amendments listing the

same collateral and/or making reference to the UCC–1 *and* a security agreement which failed to list a description of the collateral, could be viewed together as constituting a security agreement between the debtor and creditor. In the present case, FNBM has no security agreement, and its note makes no reference to a UCC–1 or the proceeds of any equipment it now claims were secured by the Note. Accordingly, *Baker* provides no authority for FNBM's assertion of secured status.

■ It is of interest to note that in *Baker*, the note held by the bank also referred to equipment "deposited with" the bank, as does the Note in the present case. Although the *Baker* court questioned this language, it found that the note was sufficient to put third parties on notice that the debtor had intended to give the bank a security interest in the equipment and vehicles referred to in the note. This Court, however, reads such language more strictly, and in the absence of other language granting security in certain collateral, holds such language will create a security interest *only* in property in the possession of the allegedly secured party at the time the note or security agreement was executed.

FNBM also cites *In re Frazier*, 16 B.R. 674 (Bankr.M.D.Tenn.1981) and *Casco Bank and Trust Company v. Cloutier*, 398 A.2d 1224 (Me.1979) in support of its position that the financing statements it purportedly filed, when read in conjunction with the Note executed by the Debtor, satisfy the requirements for an enforceable security agreement. *Frazier*, however, only held that a financing statement alone may serve as a security agreement if it contains language granting such interest. The financing statements filed by the secured party in *Frazier* contained language on the reverse side stating that it was "the intention of the parties that [the] instrument shall serve both as a Financing Statement and Security Agreement", as well as other language evidencing the intent of the debtor to grant the secured party a security interest in the collateral therein described. FNBM has not alleged that any

such language was contained on the financing statements it herein filed.

In *Casco*, the debtor executed a promissory note in favor of the creditor on November 28, 1975. The promissory note made no reference to any collateral securing the transaction. The creditor executed and filed a financing statement signed by the debtor on December 1, 1975. The financing statement reflected the date the promissory note was executed in a legend. The court therein held that these documents collectively were sufficient to create an enforceable security interest against the debtor and to place third parties on notice that the debtor intended to grant the creditor a security interest in the collateral described to secure repayment of the note, and therefore, satisfied the requirements for a "security agreement" under U.C.C. § 9–203.

*Casco* is distinguishable from the present case in several respects. Initially, the financing statements filed by FNBM failed to make any reference to the date of the Note which might have placed a third party on notice of the obligation purportedly secured by the collateral described thereon. Secondly, the promissory note in *Casco* did not contain language that the debtor had "deposited" collateral with the creditor as security. The Court finds this fact to be of major significance, since a third party put on notice by the financing statements in *Casco* would not have been misled as to the status of the collateral by a review of the note referenced by the date in the legend. In contrast, the financing statements filed herein by FNBM could only have directed a third party to the Note, which stated that FNBM was in possession of certain property of the Debtor as security for the obligation thereunder. Since there is no reference in the Note to any other security to be granted to FNBM, a third party viewing the Note and the financing statements together could be reasonably satisfied that the financing statements covered only the property in possession of FNBM. Accordingly, *Casco* does not provide authority for FNBM's position that the financing statements and Note collectively establish an enforceable security agreement.

At a minimum, a security agreement must recite the obligation secured. *Modafferi*, 45 B.R. at 374, citing, *Needle v. Lasco, Inc.*, 10 Cal.App.3d 1105, 1108, 89 Cal.Rptr. 593, 595 (1970). In the absence of a writing evidencing the intent of the debtor to grant a creditor a security interest in certain property to secure a specific obligation, the Court cannot infer a security agreement. The purposes of the writing requirement of Section 9–203(1) were set forth in *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir.1973) as being twofold, one purpose being evidentiary and the other purpose being to serve as a statute of frauds. The evidentiary purpose is satisfied if a written record exists which "minimizes the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured." Official Comment 3 to the 1972 version of U.C.C. 9–203. It is precisely the absence of such written evidence in the present case which brings this dispute before the Court.

The second purpose of the writing requirement is to provide a "statute of frauds" as a prerequisite to the enforceability of a security agreement. As stated in Official Comment 5 of the 1972 version of § 9–203, unless the secured party has possession of the collateral, a security interest is not enforceable against either the debtor or a third party in the absence of a writing which satisfies part (1)(b) of § 9–203. Thus, only after the court determines as a matter of law that the written language indicates that the parties intended to create a security interest may it look past the statute of frauds requirement to determine the parties' actual intent. *In re Ace Lumber Supply, Inc.*, 105 B.R. 964 (Bankr.D.Mont.1989). As stated in Official Comment 5, "more harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of a signed writing."

In the present case, FNBM obtained a note from the Debtor which granted FNBM a security interest in equipment and securities which were deposited with the Bank. By its own admission, FNBM used the incorrect form for this type of transaction. The form FNBM used established a security interest only in property in its possession as of the date the Note was executed. FNBM has set forth no other documents which evidence the intent of the Debtor to grant it any additional security.[1] The Uniform Commercial Code was an attempt to standardize commercial law in the United States. Simply stated, the Code provided for two types of enforceable security interests: (1) possession or (2) a signed writing. To allow a writing which indicates that "the creditor has possession" to create a security interest in goods not in the creditor's possession would emasculate the Code.

The Court holds, therefore, that FNBM's security interest does not extend to the Account, regardless of whether or not the funds therein constitute proceeds of the Debtor's equipment or inventory. Having found no written evidence which establishes a security agreement in the present case, the Court will not grant FNBM's request for an evidentiary hearing to attempt to prove its security interest in the Debtor's property when FNBM has otherwise failed to meet the requirements of W.Va. Code § 46–9–203.

Accordingly, the Motion to Compel Turnover of Property of the estate filed by the Trustee will be, and hereby is GRANTED. FNBM is hereby directed to render an accounting to the Court for disposition of all the Debtor's property in its possession since December 4, 1989, and is directed to surrender all funds in the Account to the Trustee within fifteen (15) days of the date of this Order.

It is SO ORDERED.

---

1. While FNBM may have had the right to set-off against the funds in the Account under the common law or 11 U.S.C. § 553, it has not claimed any right of set-off as a defense and, therefore, the Court does not address this issue.